STATE EX REL. MURRAY, RELATRIX, v. WALKER, STATE
TREASURER, RESPONDENT.

(No. 5,100.)

(Submitted June 6, 1922.    Decided July 10, 1922.)

[210 Pac. 90.]

*Taxation—Inheritance Taxes — Statutory Construction—Failure to Fix Rate—Effect.*

Inheritance Tax Law—Construction—Extent of Liability of Widow on
Excess Over $25,000.
   1.   The Inheritance Tax Law (Chap. 14, Extra. Sess. 1921 [secs.
10377–10400, Rev. Codes 1921]) provides in section 1 that the tax
imposed by it upon the excess of the exemptions granted shall be "at
the rates hereinafter prescribed." By section 2 the beneficiaries who
take by will, deed, gift, etc., are divided into five classes, the first
class including husband, wife, children, etc., and the rate of tax is
prescribed for each class where the property transferred does not
exceed $25,000. Section 3 provides that where the property exceeds
in value $25,000 and the beneficiary belongs to any of those men-
tioned in classes 2, 3, 4 and 5 specified in section 2, the rate of tax
on the excess shall be as set forth in section 3, no provision for a
rate being made in the Act on property exceeding $25,000 in value
and transferred to beneficiaries belonging to the first class referred
to in section 2. *Held,* that in the absence of a provision fixing the
rate of tax on property in excess of $25,000 where the beneficiary
belongs to the first class mentioned in section 2, a widow who took
property by will in excess of that amount was not liable for any tax
on such excess, and was required to pay no more than one per cent
on $15,000, the amount remaining after the deduction of $10,000,
the exemption allowed a widow by the Act.

Statutory Construction—Adoption of Statute from Another State—Rule.
   2.   When a statute is borrowed from another state after it has been
construed by the highest court of that state, such construction is
adopted as a part of the law itself; the presumption being indulged
that the legislature intended that the same construction should be
given the Act in the adopting state.

Same—Legislative Intention—How Arrived at.
   3.   While courts in the construction of statutes must ascertain the
intention of the legislature, if possible, such intention must be
gathered from the language employed in the Act and not from any
extraneous sources.

---

   1.   Leading features of inheritance taxation, see note in 127 Am.
St. Rep. 1035.
   Rule for construction of inheritance tax statutes, see note in Ann.
Cas. 1915C, 322.
   Effect of partial invalidity of inheritance tax statute, see note in
Ann. Cas. 1916D, 89.

[64 Mont. 215.]

Inheritance Taxes—Failure to Fix Rate—Effect.
   4.   Although an inheritance tax is not a property tax, but is a duty
   imposed upon the privilege of receiving property by inheritance, it is
   subject to the same general rules which determine when a tax of any
   character is imposed, and therefore since taxation consists in deter-
   mining the rate of the levy and imposing it, failure of the legislature
   to fix a rate in the matter referred to in paragraph 1 above results
   in failure to levy a tax.

Original application for Writ of Mandate by the State, on
relation of Mary H. Murray against J. W. Walker, State
Treasurer.   Peremptory writ issued.

*Mr. Henry C. Smith* and *Mr. W. S. K. Brown,* the latter
of the Bar of San Francisco, California, submitted a brief in
behalf of Relatrix; *Mr. Smith* argued the cause orally.

If we are simply to interpret the Act in question according
to the plain English words employed therein, section 2 is
expressly limited to an inheritance which does not exceed in
value $25,000.   The section so declares.   Not any other mean-
ing can possibly be read into it.   And section 3, by its terms,
is expressly limited to cases where "the beneficiary entitled
thereto shall belong to any of the classes mentioned in subdi-
visions 2, 3, 4 and 5 of section 2."

In other words, the primary rate of one per cent payable
by a widow is expressly limited by section 2 to inheritances
which "shall not exceed in value $25,000," and the progressive
rates provided for in section 3 are expressly confined to cases
where the beneficiary shall belong to any of the classes men-
tioned in subdivisions 2, 3, 4 and 5; or, to put it another way,
the direct heirs mentioned in subdivision 1 of section 2 are
expressly excluded from the operation of the progressive rates
provided for in section 3.   The result is, if the plain English
of these two sections is to be given effect, that on inheritances
exceeding in value $25,000, there are not any primary rates
when the beneficiary is a direct heir.   There is no escape from
this conclusion, if the plain English of sections 2 and 3 is
simply to be interpreted.

[64 Mont. 215.]

But we apprehend that it will be claimed by the learned counsel for the respondent that these two sections should be construed in the light of the balance of the Act. There is not anything in any other part of the Act relating to rates. Section 4, however, provides for certain exemptions.

In construing this statute the following rules will assist us: 1. The courts have no concern with the wisdom of legislation; and it must be presumed that the legislative assembly had some valid reason for the enactment of the Act as passed. (*Evers* v. *Hudson,* 36 Mont. 135, 92 Pac. 462; *Hill* v. *Rae,* 52 Mont. 378, Ann. Cas. 1917E, 210, L. R. A. 1917A, 495, 158 Pac. 826; *State ex rel. Thelen* v. *District Court,* 51 Mont. 337, 152 Pac. 475; 12 C. J. 799.)    2. The court is called upon to construe a statute only when it is ambiguous, doubtful or uncertain. (*Smith* v. *Williams,* 2 Mont. 195.)    3. Where the language of a statute is plain, simple, direct and unambiguous, it does not require construction, but it construes itself, and the courts are not called upon to say what it means. (*King* v. *National M. & E. Co.,* 4 Mont. 1, 1 Pac. 727; *Taylor* v. *Ashby,* 3 Mont. 248; *Manton* v. *Tyler,* 4 Mont. 364, 1 Pac. 743; *United Missouri R. Power Co.* v. *Wisconsin Bridge & Iron Co.,* 44 Mont. 343, 119 Pac. 796; *Smith* v. *Iron Mountain Tunnel Co.,* 46 Mont. 13, Ann. Cas. 1914B, 551, 125 Pac. 649; *Osterholm* v. *Boston etc. Silver Min. Co.,* 40 Mont. 508, 107 Pac. 499.)    4. The intention of the legislature must be inferred from the plain meaning of the words of the Act, and this rule must first be applied, before resort is had to other rules. (*Hedges* v. *County Commrs.,* 4 Mont. 280, 1 Pac. 748; *State* v. *Cudahy Packing Co.,* 33 Mont. 179, 114 Am. St. Rep. 804, 8 Ann. Cas. 717, 82 Pac. 833.)    5. Words shall be given their usual construction, unless they have a technical meaning. (*State ex rel. Gillett* v. *Cronin,* 41 Mont. 293, 109 Pac. 144.)    6. The terms employed in a statute are presumed to have been used in their ordinary sense. (*State ex rel. Anaconda C. M. Co.* v. *District Court,* 26 Mont. 396, 68 Pac. 570, 69 Pac. 103.)    7. In construing a statute the courts must

elicit the meaning from the terms and expressions employed, calling to its aid the ordinary rules of grammar. (*Jay* v. *School District,* 24 Mont. 219, 61 Pac. 250; 1 Cooley on Taxation, p. 450.) 8. "The court will not add substance where there is no substance, nor will it provide means where the law provided none. We apprehend that no authority can be found to sustain a court in reading such a change into a statute as that the effect will be to abrogate a specific provision made therein." (*Hilburn* v. *St. Paul etc. Ry. Co.,* 23 Mont. 229–246, 58 Pac. 551, 811.) 9. Courts may not supply what they deem unwise omissions, nor add words which substantially add to or take from the Act as framed. (*State* v. *Frear,* 142 Wis. 320, 20 Ann. Cas. 633, 125 N. W. 961; *Hodges* v. *Dawdy,* 104 Ark. 583, 149 S. W. 656; 12 C. J. 707.)

It may be well before proceeding further to examine the history of the passage of this Act. The records in the office of the secretary of state disclose that when the bill was first introduced the second paragraph of section 3 read as follows: "When the amount of the clear value of such property or interest exceeds twenty-five thousand dollars ($25,000) the rates of tax upon such excess shall be as follows."

When the bill was in the senate the committee on finance recommended the following amendment to section 3: "Insert the words 'and the beneficiary entitled thereto shall belong to any of the classes mentioned in subdivisions 2, 3, 4 and 5 of section 2 of this Act,' after the words Twenty-five Thousand Dollars ($25,000)." This recommendation was adopted, the amendment was made, and the bill finally became a law as amended, as aforesaid.

It is impossible for the relatrix at this time to tell whether the respondent justifies his refusal to accept her tender on the ground that the Act should be so construed as to provide for a flat rate of one per cent on inheritances passing to direct heirs, to the full extent of the amount inherited as seems to be indicated by the return, or whether he will claim that the table of progressive rates provided for in subdivisions 1, 2, 3,

[64 Mont. 215.]

4 and 5 of section 3 shall apply as well to subdivision 1 of section 2. If the latter, then he is asking this court to read into the law the numeral "1," between the word "subdivisions" and the numeral "2"; or, to put it another way, he is asking the court to read *out* of the law, the very words which the legislative assembly deliberately placed in the law by amendment of the original bill. If he contends for a flat rate of one per cent on all inheritances passing to direct heirs, regardless of the amount thereof, then he is asking the court to entirely disregard the following language found in section 2, to-wit: "And shall not exceed in value $25,000."

And he is also contending for a construction of the law which never was thought of by either the legislature of Wisconsin or that of Montana or the supreme court of Wisconsin, in the case of *Beals* v. *State,* 139 Wis. 544, 121 N. W. 347. Neither of these things can be done by any rule of construction ever adopted by any court. Either would violate the most elementary and fundamental rules of the construction of statutes. The Act before amendment expressly negatives any such construction, and the amendment expressly excludes it.

Authority to impose and collect taxes upon the person or the property of an individual for public purposes must find an express statutory warrant and all laws having this object are to be construed strictly in favor of the individual as against the state. (*In re Potter's Estate* (Cal.), 204 Pac. 826; *Merced County* v. *Helm,* 102 Cal. 159, 165, 36 Pac. 399; *Hellman* v. *Los Angeles,* 147 Cal. 653, 657, 82 Pac. 313; *Connelly* v. *San Francisco,* 164 Cal. 101, 106, 127 Pac. 834, 835; *Bensley* v. *Mountain Lake Water Co.,* 13 Cal. 306, 316, 73 Am. Dec. 575.) "Duties are never imposed upon a citizen upon vague or doubtful interpretations." (Lewis' Sutherland on Statutory Construction, sec. 537; 1 Cooley on Taxation, p. 453.)

*Mr. T. B. Weir, Amicus Curiae,* submitted a brief, in support of the contention of Relatrix, and argued the cause orally.

*Mr. Wellington D. Rankin,* Attorney General, and *Mr. L. A. Foot,* Assistant Attorney General, submitted a brief in behalf of Respondents; *Mr. Foot* argued the cause orally.

In enacting sections 10378, 10379 and 10380, Revised Codes of 1921, it was clearly the intention of the legislature that property transferred to all lineal heirs, over and above the exemption, provided in section 10380 above, should bear a flat tax of one per cent of the clear value of such interest in such property, but that property transferred to .collateral heirs should bear an increased tax, as such property increased in value over the sum of $25,000, depending upon the degree of collateral consanguinity of the heir. For example: An estate of $500,000 passing to the wife of the decedent would bear a flat tax of one per cent on the excess over $10,000, or the sum of $4,900, while an estate of a like amount passing to a nephew of the decedent would be subject to a tax of two per cent upon the first $25,000 less $500, the exemption by section 10380, or $490; on the next $25,000 the sum of twice the primary rate, or four per cent of $25,000, equaling $1,000; on the next $50,000 three times the primary rate, or six per cent of $50,000, equaling $3,000; and on the next $400,000 four times the primary rate, or eight per cent of $400,000, equaling $32,000, making a grand total of $36,490. Thus a collateral heir would pay $31,590 more than a lineal heir upon the same value of property transferred, while, if the relator's contention is correct, the difference would be $36,340.

If the contention of relatrix is to prevail, it simply means that, when an estate is transferred to any heir of the class named in subdivision 1 of section 10378, the state receives so small an inheritance tax that it might just as well have been made tax free. That such was not the intention of the legislature we contend is clear. The sole purpose in enumerating classes 2, 3, 4 and 5 in section 10379 was to bring those classes within the increasing rate, and to leave heirs of class 1 under the flat one per cent rate.

In section 1352 of the Wisconsin statute, from which our section 10379 was copied, we find identically the same words, with the exception of the words "and the beneficiary entitled thereto shall belong to any of the classes mentioned in subdivisions 2, 3, 4 and 5 of the preceding section." Thus the quoted words are shown to be the amendment to the law made by the legislature of this state.

That it was not the intent of the legislature to limit the taxable estate, descending to heirs of class 1, to the sum of $25,000 is shown by the wording of section 10380, where it provides that the exemptions from the tax shall *"be taken out of the first twenty-five thousand dollars."*

If there had been any intention of exempting all of the estate in excess of $25,000 descending to heirs of class 1, the legislature would have said as much in this section. The language found in subdivision 2 of said section 10380 would then have absolutely no meaning. There would have been no reason for the legislature stating as it did: "Property of the clear value of $10,000, transferred to the widow of the decedent, and $2,000, transferred to each of the other persons described in the first subdivision of section 10378, shall be exempt."

To give any meaning whatever to this part of section 10380, the court must hold that the intent of the legislature was to levy a flat tax of one per cent upon all the property descending to heirs of class 1, over and above the exemption provided for.

This court has held, in case after case, that every word, phrase and term of a statute should be considered and none should be held meaningless, if it is possible to give effect to it. (*State ex rel. Koefod* v. *Board of County Commrs.*, 56 Mont. 355, 185 Pac. 147; *State ex rel. Smith* v. *Duncan*, 55 Mont. 376, 177 Pac. 248; *State ex rel. Bitter Root Valley Irr. Co.* v. *District Court*, 51 Mont. 305, 152 Pac. 745; *Stadler* v. *City of Helena*, 46 Mont. 128, 127 Pac. 454; *State ex rel.*

*Anaconda Copper Min. Co.* v. *District Court,* 26 Mont. 396, 68 Pac. 570, 69 Pac. 103.)

The purpose of this entire Act was to create a source of revenue for the state by means of a tax on inheritances. To sustain the contention of the relatrix here, would be to, at least partially, defeat that purpose, and this the courts are never justified in doing when the contrary construction will carry into effect the full object of the law. (*Wilkinson* v. *La Combe,* 59 Mont. 518, 197 Pac. 836.)

The fundamental purposes of the Act must be kept constantly in view, and every section thereof read with the idea of carrying out the purpose that was manifestly in the minds of the legislature when the law was enacted, to-wit: the raising of revenue for the state. (*Reeve* v. *City of Billings,* 57 Mont. 552, 189 Pac. 768; *State ex rel. Smith* v. *Duncan, supra; State ex rel. Carter* v. *Kall,* 53 Mont. 162, 5 A. L. R. 1309, 162 Pac. 385; *State ex rel. Evans* v. *Stewart,* 53 Mont. 18, 161 Pac. 309.)

Inheritance tax laws are not to be interpreted against the state, but are usually given a liberal interpretation in favor of the state to the effect of taxing every transfer that can reasonably be brought within the purview of the law. (Ross on Inheritance Taxation, sec. 35, on page 52; sec. 131, on page 171; *Estate of Gordon,* 186 N. Y. 471, 10 L. R. A. (n. s.) 1089, 79 N. E. 722.) Also a strict construction must be indulged against a rule of exemption which would yield such an absurd and unjust result as we have above shown would result here if the relator's contention is correct. A widow inheriting a half million dollars from her deceased husband would pay $150 tax, while a collateral heir would pay $36,490 tax.

A question very close to that in the instant case was decided in the case of *In re Bull's Estate,* 153 Cal. 715, 96 Pac. 366, where the widow of the deceased contended that she should pay tax only on the first $25,000 of the estate less her exemption of $10,000 at one per cent, or $150. While the

California statute is not exactly like ours, a similar interpretation was contended for. The court quotes from the statute the words: "The foregoing rates in section 2 are for convenience termed the primary rates," and holds that these words connect the two sections and show that the intention of the legislature was to levy the primary rate in all cases. However, we cite this case not so much for the foregoing as because of the holding of the court that a strict construction of the statute must be indulged against a rule of exemption that would lead to absurd and unjust results.

"The general rule is that exemptions should be strictly construed against the exemption and in favor of the tax." (Gleason & Otis on Inheritance Taxation, p. 34; *In re Gopsill's Estate,* 77 N. J. Eq. 215, 77 Atl. 793.)

*Mr. Frank Woody, Amicus Curiae,* submitted a brief in support of the argument of Respondents and argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

James A. Murray died on May 11, 1921, and by the terms of his will, property within this state of the clear market value of more than $25,000 passed to his widow, Mary H. Murray. The administration of the estate has not been concluded and the exact amount of the inheritance has not been determined. In April of this year Mrs. Murray tendered to the state treasurer the sum of $150 in full discharge of the inheritance tax due from her to the state, but the tender was refused, and thereupon this proceeding was instituted.

The pleadings present a question the solution of which [1] depends upon the construction to be placed upon certain provisions of our inheritance tax law. (Chap. 14, Laws of the Extraordinary Session of the Seventeenth Legislative Assembly, effective April 1, 1921; secs. 10377–10400, Rev.

Codes 1921.)    Only the first four sections of the statute are involved here:

Section 1 (sec. 10377, Rev. Codes 1921) provides that a tax is imposed upon every transfer of property except a transfer to the state or to one of its subdivisions or to an organization for religious, charitable or educational purposes exclusively. An enumeration of the transfers intended to be included follows, and the enumeration includes a transfer by will or by the intestate laws of this state, or by deed or gift made in contemplation of death, *etc.* The section provides further: "The tax so imposed shall be upon the clear market value of such property at the rates hereinafter prescribed and only upon the excess of the exemptions hereinafter granted."

Section 2 (sec. 10378, Rev. Codes 1921) provides: "When the property or any beneficial interest therein passes by any such transfer where the amount of the property shall exceed in value the exemption hereinafter specified, and shall not exceed in value twenty-five thousand dollars the tax hereby imposed shall be" according to certain tables of rates, referred to hereafter. Then follow five subdivisions by which all beneficiaries are arranged in classes, one class to each subdivision, the membership of each class depending upon the nearness of the relationship of the members to the decedent. Class 1, defined in subdivision 1, includes the husband or wife, as the case may be, lineal issue, lineal ancestors, adopted children, and children recognized to be such as therein defined. Class 2 includes brothers and sisters of the deceased; class 3, uncles and aunts; class 4, granduncles and grandaunts; and class 5, all other collateral heirs. As indicated above, this section also provides the rate of taxation upon any inheritance which exceeds the exemption and does not exceed $25,000, and graduates the rate according to the class to which the beneficiary belongs; for instance, a member of class 1 pays one per cent, a member of class 2 pays two per cent, a member of

class 3 pays three per cent, and so on.   The rates enumerated in section 2 are called primary rates.

Section 3 (sec. 10379, Rev. Codes 1921) provides that when the amount of the clear value of such property exceeds $25,000 *and the beneficiary entitled thereto shall belong to any of the classes mentioned in subdivisions 2, 3, 4 and 5 of section 2 of this Act,* the rates of tax upon such excess shall be as follows: (1) Upon all in excess of $25,000 and up to $50,000, two times the primary rates.   (2) Upon all in excess of $50,000 and up to $100,000, three times the primary rates.   (3) Upon all in excess of $100,000 and up to $500,000, four times the primary rates.   (4) Upon all in excess of $500,000, five times the primary rates.   (5) No tax, however, shall exceed 15 per cent of the property transferred to any beneficiary.

Section 4 (sec. 10380, Rev. Codes 1921) creates the exemptions; $10,000 to the surviving widow, and $2,000 to every other member of class 1; $500 to every member of class 2; $250 to every member of class 3; $150 to every member of class 4, and $100 to every member of class 5, and declares that the exemption shall be taken out of the first $25,000.   For convenience only, members of class 1 are called "direct heirs," and all others "collateral heirs," and the rates enumerated in section 3 will be called "secondary rates."

It will be observed that section 3 applies only to an inheritance which exceeds in value $25,000, and that the rates fixed by it apply only to the excess over $25,000; in other words, that section does not prescribe any rate for the first $25,000 of an inheritance.   Neither do the primary rates prescribed by section 2 apply expressly, for section 2 declares that it deals only with an inheritance which does not exceed in value $25,000.

Beyond controversy, our statute was copied from the Inheritance Tax Law of Wisconsin (Laws Wis. 1903, Chap. 44), and though serious defects in that law had been pointed out by the supreme court of Wisconsin as early as 1909, yet when our lawmakers undertook to legislate upon the subject in 1921,

they copied the vices as well as the virtues of the Act. The words in section 3 in italics are not found in the Wisconsin law, and for the purposes of this case they will be termed "the amendment." By extending the rules of statutory construction almost to the breaking point, the Wisconsin court was able to bridge over the palpable hiatus between the provisions of sections 2 and 3. It held, in effect, that section 1 imposes the tax upon every inheritance (subject of the law) over and above the exemption; that section 4 defines the exemptions exclusively; that since the secondary rates apply only to the excess over $25,000, the language of section 2, "and shall not exceed in value twenty-five thousand dollars ($25,000)," defines the limit to which the primary rates apply, rather than the character of the inheritance to which they apply; in other words, that the primary rates apply to the first $25,000 of every inheritance without reference to the amount of the inheritance. (*Beals* v. *State,* 139 Wis. 544, 121 N. W. 347.) To the same effect is the decision of the California court, in *Estate of Bull,* 153 Cal. 715, 96 Pac. 366. Whether we agree with the Wisconsin court is not of consequence here. We may accept the conclusion as warranted, for the purposes of this case.

As indicated above, we borrowed this statute from Wisconsin [2] practically twelve years after it had received this construction by the highest court of that state, and under the rule universally recognized and applied, we adopted the construction as a part of the law itself. In other words, the presumption must be indulged that it was the intention of our legislature that the same construction should be given to the Act in this state. (*Mares* v. *Mares,* 60 Mont. 36, 199 Pac. 267.) Applying the Wisconsin rule to the facts of this case, it follows that Mrs. Murray must pay the primary rate on the first $25,000 of her inheritance over the amount of her exemption. The amount of the exemption granted to her by the express terms of section 4 is $10,000, and the rate fixed by subdivision 1 of section 2 is one per cent, so that she must

pay one per cent on $15,000, or $150, and this much is conceded by counsel for both parties. The crux of the whole controversy arises over the inquiry: What, if anything, must she pay on the excess over $25,000? It is contended in her behalf that, since the primary rate extends only to the first $25,000, that the secondary rates apply only to the amount of an inheritance over $25,000, and by the language in section 3 in italics she is excepted from the classes which are required to pay the secondary rates, she cannot be called upon to pay any tax upon the excess over $25,000, however great that excess may be.

Counsel for the state insist that the construction given the statute by the Wisconsin court will justify us in extending the primary rates to the entire inheritance received by Mrs. Murray above the exemption. It is perfectly apparent, however, that under the Wisconsin statute and under our statute without the amendment to section 3 the primary rates cannot be extended beyond the first $25,000, for the secondary rates are not intended as a surtax. The primary rates are exclusive so far as they extend, and the secondary rates are exclusive so far as they operate. Under the Wisconsin Act and under our statute without the amendment, Mrs. Murray would be compelled to pay the primary rate of one per cent upon the first $25,000 above the exemption and the secondary rates upon the excess over $25,000. If, then, the primary rates do not extend beyond the first $25,000 in the absence of the amendment, the query suggests itself: Does the amendment operate to extend them beyond that limit? That it does not is self-evident. The amendment does not apply to section 2 at all. It has to do only with section 3, and with the application of the secondary rates therein enumerated. What, then, was the purpose of our legislature in making the amendment to section 3? As the section stood before the amendment, it dealt with but one subject—the rates upon an inheritance exceeding in value $25,000. It created the secondary rates and applied them exclusively to the excess over $25,000 in every inheritance with-

out regard to the relationship of the beneficiary to the bene-
factor. By the amendment the secondary rates are made to
apply only to an inheritance received by a collateral heir. In
other words, our legislature declared that a direct heir shall
not be required to pay the secondary rates under any circum-
stances. The amendment cannot be construed as extending
primary rates, for that was not its purpose. Those rates re-
mained just as they were before the amendment was introduced.

Counsel for the state misread section 1. It does not declare
that every inheritance is subject to tax, but only that every
inheritance above the exemption is to be taxed "at the rates
hereinafter prescribed," and the only rates prescribed by the
Act are the primary and secondary rates to which reference
has been made. The secondary rates are applied only to an
inheritance tax by a collateral heir, and the primary rates
apply only to the first $25,000 of any inheritance, so that
even though it may have been assumed that every inheritance
above the exemption would be subject to the tax at some rate,
the legislature simply failed to provide any rate for the excess
over $25,000 of an inheritance to a direct heir. To make a
concrete application of the Act to the facts of this case, the
legislature has said to Mrs. Murray: You must pay a tax
upon the amount of your inheritance over and above the ex-
emption allowed you. You must pay one per cent on $15,000
of the first $25,000—and there our lawmakers stopped, without
making any provision fixing a rate upon the excess.

While it is a general rule that it is the duty of this court
[3] to ascertain the intention of the legislature, if possible,
and construe the Act with reference to that intention, it is equally
true that the intention must be gathered from the language
employed by the lawmakers and not from street rumors. The
language of our Act is not susceptible of a construction differ-
ent from that indicated above. Whatever may have been the
undisclosed purpose of the legislature, the actual effect of the
amendment to section 3 is to emasculate the Act for all prac-
tical purposes, and to leave it a jumble of contradictory and

inconsistent provisions. The construction contended for by counsel for the state cannot be considered without a material amendment to section 2—something which this court is not authorized to make.

Although a tax of the character of the one under consideration is not a property tax, but an excise upon an inheritance [4] —a duty imposed upon the privilege of receiving property by inheritance (*Gelsthorpe* v. *Furnell,* 20 Mont. 299, 39 L. R. A. 170, 51 Pac. 267; *In re Touhy's Estate,* 35 Mont. 431, 90 Pac. 170), it is nevertheless subject to the general rules which determine when a tax of any character is imposed. Under the Constitution and laws of this state, taxation consists in determining the rate of the levy and imposing it (*Hilger* v. *Moore,* 56 Mont. 146, 182 Pac. 477), and it follows that in so far as the legislature failed to fix a rate, it failed to levy a tax.

The question of the constitutionality of the statute is not raised, and is not considered.

The amount tendered by Mrs. Murray is the correct amount of the tax due from her. She is entitled to have the obligation discharged, and the peremptory writ will issue accordingly.

ASSOCIATE JUSTICES FARR, COOPER and GALEN and HONORABLE ROY E. AYERS, District Judge, sitting in place of MR. CHIEF JUSTICE BRANTLY, disqualified, concur.