VENNEKOLT, Plaintiff, *v.* LUTEY, County Treasurer
ET AL., Defendants.

(No. 7,212.)

(Submitted December 9, 1933. Decided January 15, 1934.)

[28 Pac. (2d) 452.]

*Messrs. Toomey & McFarland* and *Mr. H. K. Anderson,* for Plaintiff, submitted an original and a reply brief; *Mr. Anderson* argued the cause orally.

*Mr. Raymond T. Nagle,* Attorney General, and *Mr. Jeremiah J. Lynch,* Assistant Attorney General, for Defendants, submitted an original and a supplemental brief; *Mr. Lynch* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an original proceeding to test the constitutionality of certain provisions of Chapter 158 of the Session Laws of 1933, known as the Motor Registration Act.

Section 1 of the Act provides: "Registration must be renewed annually and license fees and taxes paid annually. All registrations expire on December 31 of the year in which they are issued and application for registration, or re-registration, must be filed with the County Treasurer as aforesaid not later than February 1 of each year." (Subd. 2.)

Section 1 is a re-enactment, in amended form, of section 1759 of the Revised Codes of 1921, and, after enumerating the things that must be contained in the application for registration, contains the following provision: "Before filing such application with the county treasurer, the applicant shall submit the same to the county assessor of said county and said county assessor shall indicate on said application in a space to be provided for that purpose, the assessed valuation of said automobile for the year for which said application of registration is made. The applicant shall, upon the filing of said

application, pay to the county treasurer the registration fee prescribed by Section 1760 of the Revised Codes of Montana of 1921 and any amendments thereto, and all owners of motor vehicles subject to taxation in Montana on the first day of January and those acquiring ownership of motor vehicles prior to the first Monday in March shall also pay the taxes assessed against said motor vehicle for the current year of registration, unless said taxes are a lien upon real property of said taxpayer. Upon satisfactory proof that any vehicle registered subsequent to the first Monday in March was not taxable in the state on said first Monday in March or that the taxes thereon had been paid, or that said taxes are a lien upon real property of the taxpayer, such fact shall be noted on receipt issued by the county treasurer as hereinafter provided.''

Section 3 is a re-enactment in amended form of section 2002, Revised Codes of 1921, and reads as follows: ''The assessor must, between the first Monday of March and the second Monday of July in each year, assess the names of all taxable inhabitants, and all property in his county subject to taxation, except such as is required to be assessed by the State Board of Equalization, and except motor vehicles theretofore assessed as provided herein and Section 1759 as amended by this Act, and must assess such property, to the persons by whom it was owned or claimed, or in whose possession or control it was at twelve o'clock M. on the first Monday of March next preceding; but no mistake in the name of the owner or supposed owner of real property renders the assessment thereof invalid. Credits must be assessed as provided in Section 1996, Subdivision 6. The assessor must also, pursuant to the provisions of Section 1759 as amended by this Act, assess all motor vehicles in his county subject to taxation on January 1st of each year and all motor vehicles becoming taxable thereafter up to twelve o'clock noon of the first Monday in March of each year, at the time that such motor vehicles shall so become taxable in his said county.''

Plaintiff alleges that he is a taxpayer upon personal property only; that he owns a car, and that he intends to trade his car in on another car between February 1 and March 1; that,

if the above Act is enforced as written and as the county officers propose to enforce it, he will be forced to pay a tax on his presently owned car based upon the 1933 levy, whereas the owners of other cars of equal value, who also own real estate, will be allowed to pay on another and a different rate, to-wit, the rate or levy to be fixed by the county board on the second Monday of August for the year 1934; that he will also be forced to pay taxes on the other car which he intends to obtain in trade upon the basis of the 1933 rate or levy; and that as a result there will be an unjust discrimination and a lack of uniformity.

Plaintiff invokes sections 1 and 11 of Article XII, and section 27 of Article III of the Montana Constitution. Section 1 provides as follows: "The necessary revenue for the support and maintenance of the state shall be provided by the legislative assembly, which shall levy a uniform rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property, except that specially provided for in this article. The legislative assembly may also impose a license tax, both upon persons and upon corporations doing business in the state." Section 11 provides as follows: "Taxes shall be levied and collected by general laws and for public purposes only. They shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax."

Section 27, Article III, provides: "No person shall be deprived of life, liberty, or property without due process of law."

It must be admitted that a statute or a provision of law ■ must be plain and definite enough to express with reasonable certainty the object sought to be achieved. We feel impelled to make an examination of the last provision of section 3 of the above chapter—the amendment of the old section 2002—in order to ascertain if this provision is reasonably understandable and possible of fair enforcement. The section does plainly provide that all property in a county, except the property to be assessed by the State Board of Equalization,

and motor vehicles theretofore assessed under the amended section 1759, shall be assessed by the assessor between the first Monday of March and the second Monday of July. It is also reasonably plain that all motor vehicles in the county must be assessed on January 1 of each year. The trouble comes with the final provision of the section. That provision follows the requirement last mentioned, but it follows it without punctuation or break. The wording is "and all motor vehicles becoming taxable thereafter up to twelve o'clock noon of the first Monday in March of each year, at the time that such motor vehicles shall so become taxable in his said county." The members of this court have given careful consideration to the language employed and have been, and are now, unable to determine as to what the section does provide as to the assessment and taxation of the automobiles mentioned as becoming taxable between January 1 and the first Monday in March of each year.

Property becomes assessable when it is subject to taxation, but this Act does not contain any provision or qualification as to when the property becomes subject to taxation. Resort to the text does not assist, because one must reason from one uncertain event to another. If the Act carried a provision declaring when such property does become subject to taxation, then there would be something definite from which to reason. Property is not automatically or naturally taxable. It can only be taxed when a statute imposes the tax. So we find ourselves just as much at sea as though the Act merely said that property should be assessed when it becomes assessable.

It has been argued that this provision was intended to cover automobiles coming into a county between January 1 and the first Monday in March, and that such automobiles by virtue of entrance into the county within that period become taxable and therefore assessable, but the statute does not say that. If we could read that into the statute, we would then be in a position intelligently to consider the question of uniformity of taxation.

This court in *Hayes* v. *Smith,* 58 Mont. 306, 192 Pac. 615, said that the state might designate one date as to which the assessment of one class of property shall relate, and a different date as to which the assessment of property belonging to a different class shall relate. Certain rules were laid down in that case for the government of the assessing officers, and, among other things, it was declared that in designating such dates it must be done so that there would be no discrimination between property belonging to any class or within a class. If the language under consideration was clear enough and sufficiently definite to enable us to determine what was intended, then we could proceed with some degree of confidence to construe it in the light of constitutional and judicial declarations. We are forced to declare that the provision is not sufficiently clear and definite for us to say just what the legislature did intend, and as a consequence we cannot, with propriety, attempt to construe the legal effect.

We are impelled to this course because of the very obvious ambiguity and uncertainty of the provision. This court in the case of *H. Earl Clack Co.* v. *Public Service Commission,* 94 Mont. 488, 22 Pac. (2d) 1056, 1059, said that, if an Act is so vague in its terms "that men of common intelligence must necessarily guess at its meaning and differ as to its application, [it] violates the first essential of due process of law."

We hold that the language of the provision under consideration is so vague and uncertain that officials will be unable to construe it uniformly and administer the provision without discrimination. The provision cannot be uniformly administered because of the ambiguity. (See 59 C. J. 600, and cases cited.) The provision attempts to take property without due process of law, and is, therefore, violative of section 27 of Article III of the Constitution of Montana.

What we have said about the ambiguity of this statute is particularly impressive in a tax measure. It is generally recognized everywhere that tax laws must always be strictly construed in favor of the taxpayer. (*Shubat* v. *Glacier*

*County,* 93 Mont. 160, 18 Pac. (2d) 614, and cases cited; 2 Cooley on Taxation, sec. 503.)

It is true that the plaintiff in this action did not rest his case directly upon the ambiguity of the law. He complained because the law imposed an unjust discrimination and a lack of uniformity upon him, and attempted to take property without due process of law. As we have said, the law is not capable of uniform administration, because assessing officers are not likely to construe its provisions uniformly, and this court is unable to construe it in such a way as intelligently to direct those charged with its administration.

One of the chief complaints of the plaintiff is that there will be discrimination and lack of uniformity as against him by reason of the fact that he will be required to pay the taxes on his car based on the 1933 levy, while an owner of real estate who also owns a car will pay his taxes upon the 1934 levy, fixed on the second Monday in August of this year. It is not necessary for us to discuss this feature of the case, as the ambiguity makes the law inoperative.

The Attorney General, in his attempt to support the last-mentioned feature of the Act, argues that Chapter 122, Laws of 1933, must be considered in connection with Chapter 158, and that, when read and administered together, there will be no deficiency or lack of uniformity. It is not necessary to discuss that contention, except to say that there is nothing in Chapter 122, supra, that in any way tends to clear up the ambiguity of Chapter 158. Chapter 122 is an amendment to the general law relating to taxes on personal property not a lien on real estate. A discussion of that phase of the case would serve no good purpose in the light of what we have said as to Chapter 158.

The chapter under consideration (Chap. 158, Laws of 1933) carries a section repealing specifically the sections sought to be amended and generally all Acts and parts of Acts in conflict therewith. The question then arises as to the effect of our holding in this case. In other words, what effect does the repealing clause have upon the provisions of the Acts and

sections sought to be amended and repealed? This court has set that matter at rest in the following language: "Where a repeal of a prior law is inserted in an Act in order to secure the unobstructed operation of the Act, and the repealing law is itself held to be void, the provisions for the repeal of the prior law will fall with it, and will not be operative in the repeal of the prior law, unless the language of the repealing clause is such as to leave no doubt as to its intention to repeal a former law, in any event. Where, however, it is not clear that the legislature, by a repealing clause attached to an unconstitutional Act, intended to repeal a former statute upon the same subject, except on the supposition that the new Act would take the place of the former one, the repealing clause falls with the Act of which it is a part. A repealing clause in a statute of which a portion is unconstitutional is applicable only to laws inconsistent with the operative provisions of the Act." (*State ex rel. Malott* v. *Board of County Commrs.*, 89 Mont. 37, 296 Pac. 1, 8, and cases cited.)

We think it is clear that in this instance the legislature enacted Chapter 158 as a substitute for the provisions enumerated in the repealing clause, and therefore the Act would not have been adopted had it not been that the new Act was a substitute for the old. The repealing clause, therefore, falls, so far as it relates to the old statutes relative to the taxation of automobiles.

Chapter 158, Laws of 1933, is unconstitutional as to the provisions therein relating to the taxation of automobiles.

The defendants are perpetually enjoined and restrained from enforcing, or from attempting to enforce or apply, the provisions of Chapter 158, supra, to the taxation of automobiles.

Let the writ issue.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS and ANDERSON concur.

Rehearing denied January 18, 1934.