STATE EX REL. STATE BOARD OF EDUCATION ET AL., RE-LATORS, v. NAGLE, ATTORNEY GENERAL, ET AL., RESPONDENTS.

(No. 7,439.)

(Submitted May 8, 1935. Decided May 17, 1935.)

[45 Pac. (2d) 1041.]

Mr. *Walter L. Pope*, for Relators, submitted a brief and argued the cause orally.

Mr. *Raymond T. Nagle*, Attorney General, and Mr. *Oscar A. Provost*, Assistant Attorney General, for Respondents, submitted a brief; Mr. *Provost* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an original application for an injunction to enjoin the enforcement of Chapter 181 of the Laws of 1935, as against the members of the state board of education and the president of the State University.

88

The Act involved was House Bill 474. The important sections read as follows:

"Section 1. No contractor, subcontractor or agent thereof shall employ aliens or non-citizens on public works in the State of Montana; provided, that in public works involving the expenditure of Federal funds, this Act shall not be enforced in such a manner as to conflict with or be contrary to Federal statutes and regulations prescribing labor preferences. No state or other public corporation in Montana, including all state or other public offices, commissions, boards, departments and other public bodies, shall employ aliens or non-citizens; provided, that this restriction shall not apply to the employment of technically educated and trained or professional persons, when persons of such classes cannot be secured among the citizens of the State of Montana.

"Section 2. The term 'Alien' or 'Non-citizen' as used herein means any person who is not native born, or a fully naturalized citizen, or has filed his intention to become a citizen of the United States and a resident of the State of Montana for at least one year preceding the date of being employed by the contractor, subcontractor or any agent thereof, or any department, institution or office of the State of Montana, or any subdivision thereof.

"Section 3. Any officer, agent or representative of the State of Montana who shall wilfully violate, or fail to comply with any provision of this Act, and any contractor, subcontractor, or agent thereof, or department or institution or representative thereof, who shall neglect to keep an accurate record of names, occupation and citizenship of the employees, in connection with the state public works of the State of Montana, and operations of institutions and departments or who refuses to allow access to same at any reasonable hour to any person authorized to inspect same under this Act, shall be guilty of a misdemeanor and upon conviction thereof, shall be punished by a fine not exceeding Five Hundred Dollars ($500.00) or by imprisonment of not exceeding six months, or by both fine and imprisonment."

The amended petition of relators alleges that since the effective date of the Act, they (relators) have employed the following persons at the State University: (a) Two professors of education, citizens of the United States but nonresidents of the state of Montana, while other professors of education, residents of the state, are teaching in other colleges within the state and without making any effort to obtain the services of these resident professors; (b) two stenographers, citizens of the United States, but nonresidents of Montana; and (c) two clerks, one a citizen of the United States but not a resident of Montana, and one a resident of Montana, but not a citizen of the United States.

It is alleged that the respondents assert that in employing these persons, the relators violated the Act in question, and threaten not only to prosecute the relators, but also to interfere with other necessary employment by the relators, and with relators' control of the University.

Relators allege the invalidity of the Act on the grounds that (1) it is so indefinite and ambiguous as to be void; (2) it establishes no workable standard for its enforcement; and (3) it is an invalid attempt to deprive the state board of education of its constitutional control over the state educational institutions.

Respondents demurred generally, and the matter is before us on the question of whether the petition states a cause of action.

As originally drafted and introduced, the bill was not in the form finally adopted. The changed condition is due to amendments made in course of passage through the two houses. While the original bill was not very clear, it is apparent that its provisions were principally aimed at contractors and subcontractors. Its scope and provisions were substantially modified by the amendments.

It is not the province of the courts of this state to pass upon the wisdom or merits of legislative enactments, and we will not attempt to do so in this instance. That phase of the matter is clearly legislative and not judicial. (59 C. J. 945, 946; *Mills* v. *State Board of Equalization,* 97 Mont. 13, 33 Pac. (2d) 563, 569; Lewis' Sutherland on Statutory Construction, 2d ed., sec. 85.)

While this court will not assume to pass on the merits of the measure, it has jurisdiction to hear and determine applications for writs such as the one here under consideration. (*State ex rel. Clarke* v. *Moran,* 24 Mont. 433, 63 Pac. 390; *State ex rel. Fisher* v. *School District,* 97 Mont. 358, 34 Pac. (2d) 522; *Truax* v. *Raich,* 239 U. S. 33, 36 Sup. Ct. 7, 60 L. Ed. 131, Ann. Cas. 1917B, 283, L. R. A. 1916D, 545.)

It is our duty to uphold a legislative enactment whenever it ▇ is reasonably possible to do so. (*State ex rel. Snidow* v. *State Board of Equalization,* 93 Mont. 19, 17 Pac. (2d) 68; *State ex rel. Tipton* v. *Erickson,* 93 Mont. 466, 19 Pac. (2d) 227; *Byrne* v. *Fulton Oil Co.,* 85 Mont. 329, 278 Pac. 514; *State ex rel. Sparling* v. *Hitsman,* 99 Mont. 521, 44 Pac. (2d) 747.)

Of the objections urged against this Act, we think that the ▇ claim that it is ambiguous, unintelligible and uncertain is by far the most serious and the only one necessary to consider here. This court is committed to the wholesome and generally recognized rule that statutes imposing burdens, either civil or criminal, upon the citizens must be clear and explicit. This rule is applicable to tax impositions. (*Shubat* v. *Glacier County,* 93 Mont. 160, 18 Pac. (2d) 614; *Vennekolt* v. *Lutey,* 96 Mont. 72, 28 Pac. (2d) 452, 454; *Mills* v. *State Board of Equalization,* supra.) The principle is even more important in matters involving criminal penalties. (*H. Earl Clack Co.* v. *Public Service Com.,* 94 Mont. 488, 22 Pac. (2d) 1056, 1059.)

Within recent years this court has been called upon to consider several matters involving legislative enactments resting under charges of ambiguity and uncertainty such as are lodged here. In the opinions then written, we discussed the general subject in its many aspects, and recognized and adopted rules which to us seemed proper and appropriate. These rules were amply fortified by pertinent citations of, and quotations from, well-reasoned cases from many jurisdictions. A careful examination of Chapter 181, supra, and the objections urged against it fail to disclose anything new or novel. It is our opinion that all applicable law necessary for the decision of this matter may be found in the following cases: *H. Earl Clack Co.* v. *Public*

*Service Com.,* supra; *Vennekolt* v. *Lutey,* supra; *Mills* v. *State Board of Equalization,* supra; *In re Maury,* 97 Mont. 316, 318, 34 Pac. (2d) 380, 384; *Montana Beer Retailers' Protective Assn.* v. *State Board of Equalization,* 95 Mont. 30, 25 Pac. (2d) 128.

Specific and separate charges are urged against each of the important sections of Chapter 181. These sections are numbered 1 and 2, and with these objections there is coupled the charge that the ambiguity and uncertainty does not lie alone in the text employed, but that the Act as a whole is uncertain and unworkable because of a paucity of provisions for the guidance of officers in the matter of determining when a contemplated act will be legal and when it may become criminal.

It is argued that there is a general vagueness in such terms as "classes," "technically educated," "trained," and "professional persons," as used in section 1. It is also suggested that there is nothing in the Act to guide those in the position of relators in deciding whether certain persons such as were employed by them are included within the meaning of the term "technically educated and trained or professional persons" as used in the Act, and that the provision "when persons of such classes cannot be secured among the citizens of the State of Montana" is so ambiguous that it is impossible for them to determine whom they may employ. It is contended that the Act is defective because no workable standards or means are set up whereby it may be ascertained, in the case of technically educated or trained or professional persons, whether persons of such classes can be secured among the citizens of the state.

Respondents contend that all the words and terms used in section 1 of the Act and of which complaint is made, have a meaning in their ordinary use, and, since they are not technical, not defined in the Codes, and without peculiar meaning in law, they must be understood in the ordinary sense. In support of this position they cite section 15, Revised Codes 1921, *Lewis* v. *Petroleum County,* 92 Mont. 563, 17 Pac. (2d) 60, 86 A. L. R. 575, and *State ex rel. Hahn* v. *District Court,* 83 Mont. 400, 272 Pac. 525. They point out that all of these words are fully de-

fined in standard dictionaries and have a recognized and commonly understood meaning.

It is a rule well recognized and announced by this court in the cases hereinbefore cited, that "if an Act of the legislature is so vague and uncertain in its terms as to convey no meaning, or if the means of carrying out its provisions are not adequate or effective, it is incumbent upon the courts to declare it void and inoperative." (*In re Maury,* supra.) Applying this rule to the instant case, we are inclined to the view that there is force to the contention with respect to the general vagueness of terms used in section 1. While it is true that those terms do have an ordinary meaning as prescribed by dictionary definition, still in view of the circumstances in which they are employed in this Act there must remain uncertainty, and much of their meaning is likely to be a matter of conjecture. It must be observed that no methods are provided in the Act whereby it may be ascertained in case the necessity for employment of a technically educated or trained professional person should arise, just how the board may ascertain the availability of citizens for such places, and when they may decide that no citizen is available. It seems to us that section 1 of the Act presents a more ambiguous and uncertain situation than that presented in the case of *H. Earl Clack Co.* v. *Public Service Com.,* supra. There the whole matter was discussed in such a comprehensive and illustrative way that we do not hesitate to quote liberally from that opinion:

"Boiled down, this Act says to the well-meaning citizen: It is true that you may lawfully sell gasoline at different prices to different persons in different parts of the state, but if you do you may be charged with a crime, arrested, and brought to trial. A case will be made out against you by proof of the fact that you did sell gasoline to different persons at different prices, as charged. You may exculpate yourself by showing you were justified in charging the difference, and will be permitted to resume your liberty. The humiliation suffered by yourself and family, and the vexation and expense to which you have been

put, you must attribute to the law which has victimized you in an effort to see that somebody else is not cheated.

"To sum up, it is impossible for a citizen, engaged in the business of selling a standard petroleum product, upon reading the text of the Act, to determine when he is subject to penalties. (*State* v. *Holland,* 37 Mont. 393, 96 Pac. 719.) 'Laws which create crime ought to be so explicit that all men subject to their penalties may know what Acts * * * to avoid.' (*United States* v. *Brewer,* 139 U. S. 278, 11 Sup. Ct. 538, 35 L. Ed. 190.) "In order to constitute a crime, the Act must be one which the party is able to know in advance whether it is criminal or not. The criminality of an Act cannot depend upon whether a jury may think it reasonable or unreasonable. There must be some definiteness and certainty." (*Tozer* v. *United States,* (C. C.) 52 Fed. 917.) "If the legislature undertakes to define by statute a new offense, and provide for its punishment, it should express its will in language that need not deceive the common mind. Every man should be able to know with certainty when he is committing a crime." (*United States* v. *Reese,* 92 U. S. 214, 23 L. Ed. 563. *Burk* v. *Montana Power Co.,* 79 Mont. 52, 255 Pac. 337, 339.)

" 'That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law; and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.' (*Connally* v. *General Construction Co.,* 269 U. S. 385, 46 Sup. Ct. 126, 127, 70 L. Ed. 322.)

" 'The dividing line between what is lawful and unlawful cannot be left to conjecture. The citizen cannot be held to answer charges based upon penal statutes whose mandates are so uncertain that they will reasonably admit of different constructions. A criminal statute cannot rest upon an uncertain foun-

dation. The crime, and the elements constituting it, must be so clearly expressed that the ordinary person can intelligently choose, in advance, what course is lawful for him to pursue. Penal statutes prohibiting the doing of certain things, and providing a punishment for their violation, should not admit of such a double meaning that the citizen may act upon the one conception of its requirements and the courts upon another.' (*United States* v. *Capital Traction Co.,* 34 App. D. C. 592, 19 Ann. Cas. 68.)''

In view of what is said in the foregoing quotation and of the ▮▮ language of section 1 of the Act here under consideration, we are impelled to hold that section 1 is ambiguous, uncertain, and unintelligible.

Section 2 of the Act is admittedly uncertain and ambiguous unless clarified by either punctuation or additional words. The respondents claim that by the addition of a comma after the words ''United States,'' as used in the statute, the meaning may be made plain. Their counsel resort to elaborate diagrams and demonstrations to show how plain and simple the wording of the statute really is. Counsel for relators asserts that section 2 cannot be made plain without the addition of certain words. He has submitted a draft of the section with the added words. As he views the matter, to make the section intelligible, the word ''not'' must be added in one place, and the words ''any person who has not been'' must be interpolated in another place. According to his theory, to be intelligible the section should read as follows: ''The term alien or noncitizen as used herein means any person who is not native born or fully naturalized or has [not] filed his intention to become a citizen of the United States and [any person who has not been] a resident of the State of Montana for at least one year preceding the date of being employed,'' etc. Another explanation involves the addition of the word ''not'' in three places. The section would then read: ''The term alien or noncitizen means any person who is not natural born, or [not a] fully naturalized citizen, or has [not] filed his intention to become a citizen of the United States and [not] a resident of the state for at least one year,'' etc.

It is argued that we may consider a comma inserted after the words "United States," under the authority of *State ex rel. Jones* v. *Erickson,* 75 Mont. 429, 244 Pac. 287, but we are unable by the use of that slight expedient to make the section intelligible or certain. A careful study of the section as it stands impresses us with the fact that it is necessary to add something or to read something into it in order to make it clear, unambiguous, certain and workable. We are driven to the conclusion announced in *Vennekolt* v. *Lutey,* supra, wherein we said in considering necessary words evidently omitted from the text under consideration: "If we could read that into the statute, we would then be in a position intelligently to consider the question of uniformity of taxation." The proposition is but little different from that discussed by this court in the case of *Mills* v. *State Board of Equalization,* supra. There the court said: "To arrive at the construction adopted by the state board of equalization, it is necessary to read into each of these brackets following the first the following words: 'In addition to the tax levied in the preceding brackets,' or words of similar import." Continuing further, the court in the last-cited case said: "While it is the general rule that it is the duty of this court to ascertain the intention of the legislature, if possible, and construe the Act with reference to that intention, it is equally true that the intention must be gathered from the language employed by the lawmakers and not from street rumors or other similar sources. (*State ex rel. Murray* v. *Walker,* supra [64 Mont. 215, 210 Pac. 90].)"

Under the authority of the cases cited herein, we are forced to the opinion that Chapter 181 of the Laws of the Twenty-Fourth Legislative Assembly is so ambiguous, indefinite and uncertain as to render it unworkable and totally invalid.

A permanent writ of injunction is ordered issued.

ASSOCIATE JUSTICES MATTHEWS, ANDERSON and MORRIS concur.

MR. CHIEF JUSTICE SANDS, being absent on account of illness, takes no part in the foregoing decision.