No. 81-436

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

MISSOULA HIGH SCHOOL LEGAL DEFENSE ASSOCIATION,

Plaintiff and Respondent,

vs.

SUPERINTENDENT OF PUBLIC INSTRUCTION OF THE
STATE OF MONTANA, and ED ARGENBRIGHT, et al.,

Defendants and Appellants.

---

Appeal from:   District Court of the Fourth Judicial District,
               In and for the County of Missoula
               Honorable James B. Wheelis, Judge presiding.

Counsel of Record:

    For Appellants:

        John W.Larson argued, Helena, Montana
        Rick Bartos argued, Helena, Montana

    For Respondent:

        Jonkel and Kemmis, Missoula, Montana
        Daniel Kemmis argued, Missoula, Montana

    For Amicus Curiae:

        Hilley and Loring, Great Falls, Montana
        Garnaas, Hall, Riley and Pinsoneault, Missoula, Montana
        H. L.Garnaas argued, Missoula, Montana

---

                        Submitted:   December 3, 1981

                        Decided:   December 22, 1981

Filed: DEC 22 1981

Thomas J. Kearney
                    Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

This is an appeal by the Superintendent of Public Instruction of the State of Montana from an adverse ruling in a declaratory judgment and injunction action issued by the District Court, Fourth Judicial District, Missoula County. The District Court ordered the Superintendent to pay $1,275,735.50 to a Missoula County high school district and awarded counsel for the respondent attorney fees and costs of $2,177.00 out of the funds to be so paid.

We affirm the District Court.

The Superintendent contends that the District Court erred in its interpretation and application of section 20-1-301, MCA, and that it further erred in awarding attorney fees to the respondent.

The disputed statute follows:

"20-1-301. School fiscal year. The school fiscal year shall begin on July 1 and end on June 30. At least 180 school days of pupil instruction shall be conducted during each school fiscal year, [except that 175 days of pupil instruction for graduating seniors may be sufficient as provided in 20-9-313, or] unless a variance for kindergarten has been granted under 20-1-302 or a district is granted a variance under the provisions of chapter 9, part 8, of this title. Any district that fails to provide for at least 180 school days of pupil instruction shall not be entitled to receive any apportionment of the state interest and income funds. Any such forfeited moneys shall be apportioned by the county superintendent to the other elementary districts of his county."

The bracketed portion of the above statute was added by an amendment in the 1981 legislative session and was effective at all times during this dispute. Section 1, Ch. 148, Laws of Montana (1981).

The Missoula County high school district was forced to close its high schools 18 days earlier than the required

180 day school term because of a teachers' strike. The total amount of interest and income monies to which the high school district would have been entitled for the school year 1980-81 was $1,275,735.50.

The Missoula County Attorney, and later the Superintendent of Public Instruction, asked the Attorney General for an opinion as to the effect of section 20-1-301, in view of the shortened school term and also in light of section 20-9-805(1), MCA, to which we will later advert. The Attorney General issued an opinion to the effect that the high school district, by way of penalty, should lose its interest and income monies and 1/180th of the remaining state equalization aid for each missed school day.

When it appeared that the High School District would lose the interest and income monies by virtue of the Attorney General's opinion and the compliance with that opinion by the Superintendent of Public Instruction, the plaintiff, Missoula High School Legal Defense Association, a private association organized in connection with the teachers' strike, filed action in the District Court for a declaratory judgment that the high school district was entitled to its interest and income monies regardless of the statutes. The District Court so found and issued its order and judgment which is here appealed.

We first examine the provisions of section 20-1-301, supra. The District Court concluded that the words of the statute and its legislative history indicate that the penalty provision of that section applies only to elementary districts and not to high school districts. The District Court further concluded that even if the penalty provision did apply to high school districts, it would be a denial of due

process for the Superintendent of Public Instruction to impose such a penalty without first conducting a fact-finding procedure to determine whether the failure to provide for at least 180 days of pupil instruction was a result of willful acts of the school district trustees.

The Superintendent contends that by its interpretation the District Court amended the penalty provision of the statute by inserting the word "elementary" thus:

"Any [elementary] district that fails to provide for at least 180 school days of pupil instruction shall not be entitled to receive any apportionment of the state interest and income funds."

The Superintendent contends that such interpretation violates the equal funding requirements of 1972 Montana Constitution, Art. X, and the statutory guidelines for interpretation of statutes contained in sections 1-2-101 and 1-2-233, MCA. He further contends that the "plain meaning rule" adopted by this Court in State v. Cudahy Packing Co. (1905), 33 Mont. 179, 82 P. 833, 837, is violated by the District Court's interpretation.

It is obvious that section 20-1-301, MCA, as it is now constituted, is ambiguous. The 1981 amendment did not clear up the ambiguity, as the Superintendent contends, but rather intensified it. The statute speaks of apportioning money "to the other elementary districts." The provision makes no sense unless an elementary district has already been referred to. This is clear from the common understanding of the word "other" and from ordinary rules of grammar, which this Court is bound to follow. Steinbrenner v. Love (1942), 113 Mont. 466, 129 P.2d 101, 102. In order to agree with the Superintendent, this Court must ignore either the word "other" or the word "elementary."

-4-

There would be no difficulty in applying the statute if we were dealing here with an _elementary school district_ that had failed to provide 180 school days of pupil instruction. It is when a high school district is involved, as here, that the internal conflicts within the statute manifest themselves to make the statute unworkable. Since this is a penal statute, admitted on all sides, it must be strictly construed. State v. State Highway Patrol (1958), 133 Mont. 162, 321 P.2d 612, 613.

Section 20-1-301, MCA, also appears to conflict with section 20-9-805(1). A study of the legislative history of section 20-1-301, is instructive to demonstrate such potential conflict, as well as to indicate how the problem we are dealing with here arose.

"Interest & income moneys" (I&I) are defined in section 20-9-341, MCA. Essentially our I&I money is derived as proceeds from land grants, gifts, escheated estates, and other sources set out in 1972 Mont. Const., Art. X, § 2. Ninety-five percent of such income must be "equitably apportioned annually to public elementary and secondary school districts . . ." 1972 Mont. Const., Art. X, § 5.

Before the adoption of the 1972 Montana Constitution, section 75-6908, R.C.M. 1947 (Section 258, Ch. 5, Laws of Montana (1971)), provided for the distribution by the Superintendent from the state treasury of I&I monies on the basis of the number of school census children through the county superintendent of schools.

Section 75-7402, R.C.M. 1947 (Section 366, Ch. 5, Laws of Montana (1971)), provided for a 180 day school fiscal year and stated that if an elementary district did

not provide a 180 day school year of pupil instruction, it forfeited the I&I monies to the "other elementary districts."

At that time, under section 75-6909, R.C.M. 1947 (Section 259, Ch. 5, Laws of Montana (1971)), the county superintendent apportioned the county's I&I monies only to elementary school districts on the basis of school census figures.

Prior to the 1972 Constitutional Convention, there were two sources of state monies which were distributed to school districts. The I&I monies went only to elementary school districts. The other form of aid, state equalization monies under the foundation system, were distributed both to high school (secondary) districts and to elementary school districts. The 1972 Montana Constitution, however, changed the law relating to I&I monies to provide that distribution of those funds should be made to secondary as well as elementary school districts. 1972 Mont. Const., Art. X, § 5.

In 1973, the legislature acted with respect to I&I monies to comport with 1972 Mont. Const., Art. X, § 5. In an amendment to section 75-6908, R.C.M. 1947 (Section 10, Ch. 137, Laws of Montana (1973)), it was provided that the State Board of Land Commissioners should deposit the I&I monies into the "earmarked revenue fund for state equalization aid." This provision is now contained in section 20-9-342, MCA.

Under the present law, therefore, the I&I monies are integrated with other funds under the foundation program in the earmarked revenue fund as "state equalization aid." Section 20-9-343, MCA. The state equalization aid is distributed and apportioned to provide an annual minimum operating

-6-

revenue for elementary and high schools in each county. Section 20-9-344, MCA. The distribution of state equalization aid, which now includes the I&I monies, is ordered by the board of public education on the basis of annual entitlements determined by the Superintendent. Section 20-9-344(2)(c), MCA.

This brings us to section 20-9-805(1), MCA, which did not exist prior to 1979 when it was enacted. That section provides:

> "20-9-805. Rate of reduction in annual apportionment entitlement. (1) For each school day short of the minimum number of school days required by law that a school district fails to conduct by reason of one or more unforeseen emergencies or by reason of any other cause and for which the school district is not entitled to apportionment credit, the superintendent of public instruction shall reduce the equalization apportionment and entitlement of the district for that school year by 1/180th."

It appears that the legislature failed to consider that the I&I monies were now a part of the "equalization apportionment" referred to in section 20-9-805(1). The result is that section 20-1-301, the disputed statute here, requires the elimination of I&I monies from the offending district, and section 20-9-805(1), includes those I&I monies in determining the equalization apportionment for which the entitlement is to be reduced by 1/180th. These confusing statutes led the attorney general, small blame to him, to conclude that a school district which failed to conduct 180 school days due to a teachers strike would lose the whole of the interest and income monies, and a 1/180th reduction of "remaining state equalization aid for each missed school day." Obviously section 20-9-805(1), does not include the word "remaining."

These ambiguous provisions relating to the penalty to be assessed against any elementary or high school district

-7-

that fails to provide 180 school days of pupil instruction are so conflicting that they require legislative review and revision. Meanwhile, since these are penal statutes, courts are powerless to apply them. Statutes which impose penalties, either civil or criminal, must be clear and explicit, and where such statutes are so vague and uncertain in their terms as to convey no meaning, or if the means of carrying out those provisions are not adequate or effective, the courts must declare the penal provisions void. State v. Nagle (1935), 100 Mont. 86, 45 P.2d 1041, 1042-1043.

We point out in passing that section 20-1-301, MCA, is further ambiguous in that it provides that a high school district may provide 175 school days of pupil instruction for graduating seniors, but nevertheless, in its final sentence states that if a district fails to provide at least 180 school days of pupil instruction it is not entitled to interest and income monies. While that ambiguity is not involved in this case, we point it out to the legislative draftspersons.

Now to the second issue. The Superintendent contends that the award of attorney fees and costs was improper in this case because of 1972 Mont. Const., Art. X, § 3, which provides that the public school funds shall forever remain inviolate, guaranteed by the state against loss or diversion.

The respondent contends that the attorney fees are proper under the "common fund" doctrine.

Art. X, § 3, is not violated when a school district expends funds to preserve or properly administer school funds. The Superintendent admitted the power of school districts to hire private attorneys when necessary, and that school funds could be used for the payment of the legal expenses thus incurred.

-8-

In Means v. Montana Power Co. (1981), ____ Mont. ___ ,
625 P.2d 32, 38 St.Rep. 351, we said:

> "The 'common fund' concept provides that
> when a party through active litigation
> creates, reserves or increases a fund, others
> sharing in the fund must bear a portion of the
> litigation costs including reasonable attorney
> fees. The doctrine is employed to spread the
> cost of litigation among all beneficiaries so
> that the active beneficiary is not forced to
> bear the burden alone and the 'stranger' (i.e.,
> passive) beneficiaries do not receive their
> benefits at no cost to themselves. See Vincent,
> supra, 557 F.2d at 769.
>
> "The doctrine is well recognized and has been
> quoted in several Montana cases. [Citing
> cases.]" 625 P.2d at 37.

The actions of the respondent to preserve for the
Missoula County high school district the interest and monies
that it would otherwise be entitled to receive bring the
respondent within the "common fund doctrine." Accordingly,
it is entitled to recover reasonable attorney fees and costs
incurred in that effort out of the common fund.

We therefore affirm the order and judgment of the
District Court and remand the cause to the District Court
for an evidentiary hearing with respect to attorney fees and
costs to which respondent is entitled by reason of this
appeal. The matter of attorney fees to be awarded on appeal,
where proper, is completely within our prerogative, but when,
as here, we find an evidentiary hearing is necessary, we
request and order the District Court to determine a reason-
able attorney fee and costs for appeal and to submit the
same to us in an order for of our approval. Meanwhile, time
for petitions for rehearing and remittitur shall run from
the date hereof in the usual course.

<u>John C. Sheehy</u>
                    Justice

-9-

We Concur:

_Frank I. Haswell_
Chief Justice

_Gene B. Daly_

_John Conway Harrison_

_Daniel J. Shea_
Justices