IN RE BAXTER'S ESTATE. CLIFFORD, APPELLANT, *v.*
DAVIS, EXECUTOR, ET AL., RESPONDENTS.

(No. 7,384.)

(Submitted December 8, 1934. Decided December 20, 1934.)

[39 Pac. (2d) 186.]

*Mr. J. E. Healy,* for Appellant, submitted a brief and argued the cause orally.

*Mr. J. A. Poore, Mr. W. D. Kyle, Mr. John K. Claxton, Mr. Philip O'Donnell* and *Mr. R. P. Leahy,* for Respondents, submitted a brief; *Messrs. Poore, Kyle* and *O'Donnell* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Jere A. Clifford has appealed from a judgment entered in the district court of Silver Bow county in a proceeding to determine heirship in the estate of Elizabeth D. Baxter, deceased.

Elizabeth D. Baxter died in Butte, Silver Bow county, Montana, in February, 1931, leaving a will wherein she devised and bequeathed approximately one-fourth of her estate to friends, but made no provision with respect to the remainder thereof, and named Andrew J. Davis executor. The will was admitted to probate on March 16, 1931, and Davis was appointed executor and qualified.

At the time of her death Mrs. Baxter was a wealthy, childless widow over seventy years of age; she left surviving her neither parent, nor sister, nor brother known to be living. Many persons appeared claiming to be heirs and entitled to share in the distribution of the undisposed portion of the estate.

On March 19, 1932, Philip O'Donnell, an attorney practicing in Butte and representing a number of persons residing in England and Scotland and claiming to be cousins german, filed a petition herein praying the court to ascertain and declare the rights of all persons to the estate and all interests therein, and to whom distribution thereof should be made.

Upon the filing of this petition, the court made and filed its order directing service of notice upon all persons interested in the estate to appear on the fifteenth day of June, 1932, and show cause and exhibit their respective claims of heirship, ownership or interest in the estate. Pursuant to the order, notice was personally served on all parties who had appeared in the estate matter, including Jere A. Clifford, and was mailed to all others who had made claims but had not appeared. O'Donnell then made and filed his affidavit for publication of notice, and on April 8, 1934, the court made its order directing service of notice by publication upon all persons named and not named having, or claiming to have, any interest in the estate. The notice with citation was published once a week for four successive weeks, beginning April 9 and ending April 30, 1934. Proofs of service and publication were made, and on June 16, 1934, the court entered its order decreeing that due and legal notice had been given all persons interested in the estate, in accordance with the order and the law, and on the same day entered the default of all persons named and not named, who had not appeared in response to the citation.

Jere A. Clifford, who was not an heir, but who had filed written appearance claiming under the will, on the morning of June 16 filed a "complaint," naming all persons named in the citation as defendants, and alleging that under the will of Elizabeth D. Baxter there was devised to him the property known as the "Windsor Hotel" in Butte, with the provision that, "should said property hereby devised * * * be sold or disposed of prior to my death, then I give and bequeath to said Jerry Clifford an amount of money equal to the amount of money received from such sale, and if otherwise disposed of, then an amount of money equal to the value of said property at such time." It is then alleged, in effect, that, because of the filing of certain claims which may affect the title to a one-half interest in the hotel property, the plaintiff elects to take the cash value of the property, which he alleges to be $75,000, "in case he shall not be accorded the whole as

intended under the will." Clifford prayed that all claimants be required to answer his complaint within twenty days after service of a copy on them, or be declared in default, and that the court ascertain and determine the interests of all claimants and adjudge the share to which each is entitled.

Thirty-three claimants, represented by Attorney O'Donnell, filed a joint answer, setting up their respective claims to distributive shares of the portion of the estate not disposed of by the will, admitting the validity of the will and regularity of its probate; they admitted that Clifford is entitled to receive the Windsor Hotel, but denied his right to elect to take its value in money, and denied, on information and belief, that it has a value of $75,000. Several heirs of like status, represented by Mr. W. D. Kyle, filed like answers. Three or four claimants filed answers alleging their relationship to the decedent, but later, discovering that the relationship was too distant to entitle them to any part of the estate, withdrew.

The basis of Clifford's claim of right to elect is that decedent claimed the hotel property through inheritance as the sole heir at law of her brother, James L. Hamilton, who died intestate in Butte in 1930, and in whose estate proceedings to determine heirship were then pending, so that, if Elizabeth D. Baxter was shown not to be the sole heir, Clifford would not secure title to the hotel as sole owner. Now, one Sarah Planner, with others, had made claim as being the issue of John Hamilton, a long-lost brother of decedent and of James L. Hamilton; and one James Hamilton, of Glasgow, Scotland, claimed an interest in the estate as the son of one William Hamilton, whom he alleged to be a brother of James L. Hamilton and Elizabeth Baxter. If either of these claimants established the claim asserted, such claimant would be entitled to share in the Elizabeth Baxter estate, and with her in the James L. Hamilton estate. However, the Planner claimants withdrew and were later declared to be in default, while James Hamilton, of Glasgow, filed his disclaimer and withdrawal herein.

The executor filed an answer to Clifford's complaint, and by replies issue was joined as to all claims made. No party to the proceedings questioned Clifford's right to take the hotel property under the will, but no party admitted his right to elect to take its value instead of the real estate.

After a hearing and the submission of the matter, the court made voluminous findings, based on the evidence adduced, and conclusions of law drawn therefrom, followed by its judgment in which Jere A. Clifford was declared to be entitled to receive the Windsor Hotel, with the land upon which it is situated, as described. Clifford has appealed from the judgment; no bill of exceptions was presented or settled; and the appeal is presented on the judgment-roll alone.

By his specifications of error, Clifford questions the sufficiency of the petition filed, the sufficiency of the affidavit for publication, the sufficiency of the notice directed to be served, and the sufficiency of the service, and asserts that thereby a federal question is raised as to whether or not due process of law has been had. Error is also specified on the court's failure to find in favor of Clifford in the sum of $75,000 and either direct the distribution of that amount to him or impound it for his benefit, in case title to the hotel property fails in part or in its entirety.

The respondents have moved to dismiss the appeal upon the grounds (1) that Jere A. Clifford is not a party aggrieved by the judgment from which he appeals, and (2) that his only interest in the Baxter estate is derived through the will, and the judgment grants to him all the will provides.

Had the testatrix bequeathed to Clifford a sum of money, as she did to other friends, the position taken by the movants would be unassailable; but it must be remembered that the title of the testatrix to the real estate devised to Clifford was acquired as the sole heir of her brother, James L. Hamilton. It follows that, if the judgment-roll before us discloses that the trial court was without jurisdiction to enter the judgment, and does not, therefore, constitute a bar against the aforementioned "long-lost brother" of James L. Hamilton

and Mrs. Baxter, or any direct heirs he may have left surviving him, a cloud is cast upon Clifford's title to the one-half interest in the real estate which would have descended to John Hamilton, or his heirs, if living at the time of the death of James L. Hamilton. Regardless of whether or not Clifford was entitled to elect to take the value of the property, rather than the real estate, he was entitled to the entry of a valid judgment forever barring the claims of all nonappearing and unknown persons in and to the property awarded to him by the judgment. He had an interest in this part of the subject matter of the judgment which is injuriously affected by the judgment, if the judgment be a nullity, and is therefore an "aggrieved party" within the meaning of section 9730, Revised Codes 1921. (*Hornbeck* v. *Richards*, 80 Mont. 27, 257 Pac. 1025; *In re Bernheim's Estate,* 82 Mont. 198, 266 Pac. 378, 57 A. L. R. 1169.) The motion to dismiss the appeal is denied.

Contention is made by Clifford that the petition and the order are insufficient, in that they do not fully comply with the requirements of the statute authorizing such a proceeding; particularly it is said that the petition "gives nothing concerning the man of mystery in this proceeding, John Hamilton, nor his heirs."

In so far as the statute is concerned, all that the petitioner is required to show is that the petitioner is an heir of the deceased, or entitled to the distribution, in whole or in part, of the estate. He then prays that the court or judge ascertain and declare the rights of all persons to the estate, and all interests therein, and to whom distribution thereof should be made. (Sec. 10324, Rev. Codes 1921.) There is no requirement in the statute that the petition shall name the persons interested in the estate. The names, ages and residences of all known heirs and devisees of the decedent must be before the court at the time such a petition is presented. (Sec. 10022, Id.) Upon the filing of the petition, "the court or judge must make an order directing service of notice to all persons interested" in the estate, and "such order" must

set forth "the names of all persons who may have appeared claiming any interest in said estate, in the course of the administration," and "such other persons as the court or judge may direct." (Sec. 10324, Id.) Those persons who have appeared are known to the court or judge, and the naming of them in the petition would hardly seem necessary, though it was done in the petition before us. What "other persons" than those named in the will, known to be heirs of the decedent, or who have appeared in the course of administration and made claim to some part of the estate, the court or judge might name in his order, is not clear. The statutory order to be served requires "all persons named or not named having or claiming any interest in the estate of said deceased" to appear at the time and place specified and exhibit their claims.

Although the petition for the probate of the will is not before us, it is clear that John Hamilton was not named therein as an heir, and it is clear that he did not appear in the course of administration and claim an interest in the estate. If John Hamilton was in fact an heir and his name was fraudulently omitted from the petition for probate of the will, and the fact that there was an additional heir was fraudulently concealed from the court, a different situation would be presented; there is no allegation of fraud here. The facts concerning this so-called "man of mystery," as they appear from the findings of fact which must be presumed to be amply supported by the evidence not brought before us by bill of exceptions (*Thelen* v. *Vogel*, 86 Mont. 33, 281 Pac. 753; *Shaw* v. *McNamara & Marlow*, 85 Mont. 389, 278 Pac. 836), are as follows: William Hamilton and his wife, Jane Lindsay Hamilton, had three children, born in Scotland, John in 1848, Elizabeth D. in 1850, and James L. in 1851. Jane Lindsay Hamilton died in Wisconsin in 1856. William Hamilton came to Montana in 1864 and located at Fish Creek, in Jefferson county, where he was joined by his son John, prior to 1870, and by Elizabeth D. and James L. in 1870. John Hamilton left the family home in 1871, and

shortly after wrote his sister from Fort Benton for money, which was sent him. From that time on he has never been heard from, or of, by his family or any of his relatives. He had had no trouble with any member of the family, and the members thereof made diligent search and inquiry for him without success, and thereafter believed him to have died. William Hamilton married again in 1886 and died at Butte, Silver Bow county, in 1894, intestate, and his estate was in the course of administration for the next two years. At the time of his death he was a well-known resident of Silver Bow county and affiliated with several lodges; he was killed outside the gate of his ranch near Butte; and the manner of his death received considerable publicity throughout the state of Montana. On the closing of his estate, the property was distributed to his wife and his children, James L. Hamilton and Elizabeth D. Baxter.

In the reply of Jere A. Clifford to the claim of James Hamilton, of Glasgow, this appellant, now claiming that John Hamilton has never been proved dead, alleged the complete regularity of the proceedings in the matter of the estate of William Hamilton, and that the distribution of his estate to his widow and James L. Hamilton and Elizabeth D. Hamilton "conclusively established" that they were the only heirs and were so adjudged by "judgment *in rem* obtained upon full notice and jurisdiction had, and * * * must stand as forever binding and conclusive upon the question of the heirship of said William Hamilton." In his so-called complaint, Clifford alleges that the question as to whether or not the property devised to him was owned, in whole, by the decedent, "is to be determined in the matter of the estate of James L. Hamilton, deceased, from whose estate said Elizabeth D. Baxter derived her rights whatever they were in said property."

James L. Hamilton died intestate at Butte in 1930, without wife or child, leaving an estate consisting of real and personal property of a value in excess of $2,000,000. Since his death, matters in his estate have had considerable publicity, and

certain phases thereof.have been before this court. On March 11, 1932, proceedings to determine heirship were instituted, and due and legal notice was published pursuant to the provisions of sections 10324–10326, Revised Codes 1921, and therein John Hamilton did not appear; by the judgment therein Elizabeth D. Baxter was declared to be the sole and only heir at law of James L. Hamilton, and it was declared that the decedent left no brother surviving him, and in this proceeding the court found that John Hamilton "died many years prior to  *  *  *  1894."

Our statute declares that, "where the questions shall have been litigated under the provisions of these sections, the determination thereof, as therein provided, shall be conclusive in the distribution of said estate." (Sec. 10326, Rev. Codes 1921.) In view of the fact that the evidence on which the court made its findings is not before us, it must be presumed that, if it was necessary that John Hamilton be named in the citation issued in the proceedings had in the James L. Hamilton estate, he was so named; but we do not hold such naming is necessary under the statute. All that the statute requires is that the order "set forth the name of the deceased, the name of the executor,  *  *  *  the names of all persons who may have appeared claiming any interest in said estate  *  *  *  up to the time of the making of said order, and such other persons as the court or judge may direct." (Sec. 10324.) As to "such other persons" as shall be named, the matter is left to the discretion of the court. Where, as in the instant case, the statute authorizes proceedings against parties who may have an interest in property without naming them, and the statutory procedure is followed, such parties are bound by the judgment to the same extent as if they had been named. (See note to *Buck* v. *Simpson*, L. R. A. 1918F, 604, 611 [65 Okl. 265, 166 Pac. 146], and cases cited.) By compliance with the statute, the court acquires jurisdiction "to make a decree *in rem* as to the ownership of the property which will be distributed by it." (*In re Spriggs' Estate,* 68 Mont. 92, 216 Pac. 1108.)

This court has said that "suits *in rem* may be divided into four classes: \* \* \* Second, those which are instituted to determine the status of particular property or persons." (*Gassert* v. *Strong,* 38 Mont. 18, 98 Pac. 497, 501.) The Supreme Court of the United States holds that such proceedings are "in the nature of a proceeding *in rem,* and is therefore one as to which all the world is charged with notice." (*Goodrich* v. *Ferris,* 214 U. S. 71, 29 Sup. Ct. 580, 583, 53 L. Ed. 914.) In a proceeding *in rem* or *quasi in rem,* it is erroneous to name a person as a defendant who is known to be dead, but where such a person and his unknown heirs are named, the service by publication is to be treated as though the name of the dead man had been omitted. (*Organ* v. *Bunnell,* (Mo. Sup.) 184 S. W. 102.) On the record here it appears that John Hamilton was declared dead by the judgment entered in the William Hamilton estate matter in 1896.

The notice is sufficient to vest the court with jurisdiction to enter the judgment which is "conclusive as to the rights of heirs, legatees, or devisees, subject only to be reversed, set aside, or modified on appeal" (sec. 10328, Rev. Codes 1921), if it sufficiently complied with the statutory requirement as to time.

Counsel for Clifford contends that the heirs did not establish the fact of the death of John Hamilton, or that he left no children now living. As to John Hamilton, in the absence of the evidence; the finding that he died long prior to the death of his father, which occurred in 1894, is sufficient, but there is no finding respecting children.

Under the statute, a person not heard from in seven years is presumed to be dead (sec. 10606, subd. 26, Rev. Codes 1921), but there is no presumption that such person did not leave issue. (See note, Ann. Cas. 1915C, 1061.) However, the findings indicate evidence that John Hamilton left home at the age of twenty-three years, unmarried, and, having had no difficulties with his family, there was no reason why he should not have written to members thereof; it was but natural that he should have; the father, brother, and sister became

concerned, and made diligent search and inquiry for him, without result.

Testimony relative to issue could only be negative; such testimony would hardly seem necessary in the light of the showing made. However, the statute does not require that unknown heirs be named; no heir appeared and established a claim as the issue of John Hamilton; and consequently the judgment is as binding upon such issue, if there be such, as it is upon all other unnamed and nonappearing heirs.

As to the affidavit for publication: It sets forth the ultimate facts which form the bases for such service under the statute (sec. 9117, Rev. Codes 1921), and is sufficient in this respect. (*Ervin* v. *Milne*, 17 Mont. 494, 43 Pac. 706.) There is no merit in the objection that the affidavit was made by the attorney for foreign heirs; such an affidavit may be made on information and belief. (*Smith* v. *Collis*, 42 Mont. 350, 112 Pac. 1070, Ann. Cas. 1912A, 1158.)

Clifford's contention is that the statute requires notice for a minimum of sixty days from and after the date of the last publication of the notice. There is no merit in this contention. The meaning of the statute is clear and unmistakable; it requires the court or judge to make an order directing service of notice, not that those interested in the estate shall appear and plead within a specified time, but on a day certain "to be named therein," which date of appearance must be fixed "not less than sixty days nor more than four months from the date of the making of such order." (Sec. 10324, above.) Manifestly, the requirement that the day for appearance be set at least sixty days after the date of the order is to accord the necessary time for publication and ample time for appearance thereafter. The statute then requires that the notice be served "in the same manner" as a summons in a civil action, which includes service by publication. Of course, undue delay in securing service might render the service defective, but there was no such delay in the case at bar. Even if we were to hold that the "manner" of service includes the time for appearance after service is completed, the service would be valid. In a civil action, the defendant

is entitled to twenty days after the last publication of summons; here the publication was complete forty-eight days before the time for appearance.

Error is assigned on the court's failure to make a finding ▮ as to the value of the Windsor Hotel, and to decree that Clifford is entitled to distribution of that amount in lieu of the hotel, or to impound that amount for him in the event title to the hotel fails in whole or in part.

It is contended that, by the above-quoted provision of the will, the testatrix intended that Clifford should have the hotel with title clear, or, if title should fail in whole or in part, the full value thereof, and that the provision "if otherwise disposed of" means if otherwise distributed in the estate—a failure of title, in whole or in part, by reason of a proved claim in the estate matter; and that, if the value of the hotel is not impounded, John Hamilton or his heirs may later deprive Clifford of a part of the property the testatrix intended he should have.

The wording of the devise to Clifford is clear and unambiguous: Mrs. Baxter devised to her friend Jerry (Jere A.) Clifford the Windsor Hotel, but she declared that, should that property "be sold or disposed of prior to my death, then I give and bequeath to said Jerry Clifford an amount of money"; if sold, the amount received; if "disposed of" otherwise than by sale, the value of the property at the time it was disposed of. The force of the entire alternative provision for a legacy to Clifford in lieu of the devise was eliminated by the death of Mrs. Baxter without either selling or otherwise disposing of the hotel property. There is no authority in the will for an election to reject the devise and take a legacy; Clifford's position is no different than if the will read: "Devise to Jere A. Clifford, the Windsor Hotel." The provision here considered was merely the testatrix' method of preventing an ademption of the will as to the property, which would have resulted from the sale or other disposition of the real estate during her lifetime, except for this provision. (See 28 R. C. L. 347.) The judgment awards to Clifford all that he is entitled to under the will.

We need not discuss the effect upon Clifford's title of a future assertion of claim to an interest in the property by John Hamilton, or any heir he may have had; the court and counsel meticulously complied with all the requirements of the statutes with respect to proceedings to determine heirship; these proceedings were prosecuted to judgment; and that judgment is declared to be conclusive. (Sec. 10328, above.)

Finally, it is contended that the court erred in not awarding ▇ Clifford costs and attorneys' fees in a substantial amount as plaintiff in the action, ''inasmuch as the plaintiff had and has preserved, and is now preserving, the estate of the deceased against unlawful and non-jurisdictional distribution.''

As the appeal is based on the judgment-roll alone, what the ''plaintiff'' has done in the past is not before us. From the record—the judgment-roll—Clifford stood in no different position than did any other claimant; there appears no reason why he should have done more than make appearance and present his claim to the court. It does not appear from the record that he challenged the sufficiency of the notice in the trial court; indeed, in his complaint he alleges merely that, on June 16, 1932, the court ''duly made and entered a decree * * * establishing proof that notice had been served on persons claiming any interest'' in the estate, and, as noted above, in his reply to the claim of James Hamilton, alleged that the ''decree of distribution and establishment of heirship, in the matter of the estate of William Hamilton deceased,'' were ''duly given and made'' in 1896, and ''conclusively and forever established'' that his widow, James L. Hamilton and Elizabeth D. Baxter, were the only heirs of William Hamilton. He then alleges that, as a devisee, he is in privity with Elizabeth D. Baxter, and now claims under the above decree the same rights that the deceased might claim and assert with regard to the establishment of heirship and her ''relationship towards her father and towards her brother James L. Hamilton, and towards all the world,'' without mentioning the possible existence of a brother John Hamilton. In so far as the record discloses Clifford's activities in the heirship proceeding, they did not go beyond protecting his own interest

in the estate, which interest was not contested by any person claiming an interest in the estate who appeared and remained a party to the proceeding; and his only record reason for appeal was his desire to secure something more than the judgment awarded him, coupled with the question of jurisdiction, evidently raised for the first time on the appeal.

The court did not err in denying appellant costs and attorneys' fees, although he did, unnecessarily, designate himself the "plaintiff" in the proceeding.

For the law as to attorneys' fees and costs in such matters, see *In re Baxter's Estate,* 94 Mont. 257, 22 Pac. (2d) 182; *In re Hamilton's Estate,* 96 Mont. 551, 33 Pac. (2d) 258.

Judgment affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, STEWART and ANDERSON concur.

Rehearing denied December 31, 1934.