In re BAXTER'S ESTATE. DAVIS, Executor, et al., Appellants, v. HAMILTON et al., Respondents.

(Nos. 7,522 and 7,523.)

(Submitted January 25, 1936. Decided February 11, 1936.)

[54 Pac. (2d) 869.]

*Mr. J. A. Poore,* for Appellant Andrew J. Davis, Executor, submitted an original and a reply brief and argued the cause orally.

*Mr. Thomas J. Walker, Mr. Harlow Pease, Mr. Ray T. Elsmore,* of the Bar of Salt Lake City, Utah, and *Mr. John H. Mottola,* of the Bar of the State of New York, submitted a brief in behalf of Appellants Elizabeth Geddes et al.; *Mr. Pease* argued the cause orally.

*Mr. John K. Claxton, Mr. Philip O'Donnell* and *Mr. R. P. Leahy,* for Respondents Jeanie Dale Farguhar et al., submitted a brief; *Mr. O'Donnell* argued the cause orally.

*Mr. W. D. Kyle,* for Respondents James Hamilton et al., submitted a brief and argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This matter involves two appeals from a decree of distribution entered in the estate of Elizabeth D. Baxter, deceased. The controversy grows out of matters involved in the estates of two deceased persons, James L. Hamilton and Elizabeth D. Baxter, brother and sister.

This court has heretofore been called upon to decide various matters involved in the administration of the two estates. (*In re Baxter's Estate (Farguhar* v. *Davis, Exr.*), 94 Mont. 257, 22 Pac. (2d) 182; *In re Baxter's Estate (Clifford* v. *Davis, Exr.*), 98 Mont. 291, 39 Pac. (2d) 186.) An examination of the opinions in the two previous matters throws light on the situation generally involved. However, it is necessary to make somewhat of a restatement in order that the facts and conditions may be understood as applying to the matter immediately before us for decision.

James L. Hamilton died intestate at Butte, Montana, on April 17, 1930, leaving a large estate consisting of real and personal property. Andrew J. Davis was administrator of the estate. In the course of the administration a decree of heirship was made and entered therein adjudging that deceased died intestate, that he left no wife, child, parent or brother surviving him, and that his only sister was Elizabeth D. Baxter, and that she, by virtue of such fact, was the sole heir of her brother and entitled to distribution of all of his property. Thereafter a decree of final distribution was entered in the estate distributing all the property of deceased to the estate of his sister, Elizabeth D. Baxter, who died between the date of the death of her

brother James L. Hamilton and the date of the entry of the decree of distribution. No question has ever been raised directly in the estate of James L. Hamilton as to the accuracy of the decree of heirship or the decree of distribution.

Elizabeth D. Baxter died on February 23, 1931. She left a will in which she nominated Andrew J. Davis as executor and disposed of a portion of her property. Davis qualified as executor and proceeded with the administration of her estate. It will be observed that the bulk of her estate consisted of the property distributed from the estate of her brother. By her will, it was provided that a portion of her property should go to certain designated legatees, but in it she declared that she had not then decided on the disposition of the balance of her estate not therein devised or bequeathed, but had left that matter for future consideration, a matter never thereafter adjusted. Mr. Davis proceeded with the administration of her estate in the ordinary manner under the laws of the state of Montana.

In due time, to-wit, on March 19, 1932, proceedings to determine heirship were instituted under the provisions of sections 10324, 10325 and 10326, Revised Codes 1921. The matter of heirship proceeded to decree, and thereafter Jere A. Clifford, one of the beneficiaries under the will, perfected an appeal therefrom to this court. On that appeal we examined the proceedings and reviewed the various steps involved, to the end that the judgment of the district court was affirmed. While that appeal did not involve all of the considerations here presented, it nevertheless did constitute a review of the whole proceeding and affirmed the regularity and legality thereof. No question is here raised as to the service of process, notice or other steps involving the proceedings or the decree resulting therefrom.

The decree of heirship in the Baxter estate was comprehensive and all-inclusive. It specifically and very properly determined and decided just who were the heirs of Elizabeth D. Baxter, deceased, and who were entitled to receive by distribution, not only the legacies enumerated in the will, but the residue of the estate not affected by such legacies. This decree found and de-

clared that, as to the balance of the estate not disposed of by the will, there were forty first cousins of the deceased who were entitled to such residue, share and share alike. Seven of these heirs were represented by Mr. W. D. Kyle, who filed a brief herein, and the remaining thirty-three were represented of record by Messrs. John K. Claxton and Philip O'Donnell. These thirty-three were not residents of the state of Montana.

By finding No. 51 it was found that the thirty-three heirs, Jeanie Dale Farguhar and others, were heirs and were each entitled to one-fortieth of the residue of the estate. The finding in that respect is not questioned here by anyone, except Rose Currier, the alleged widow of the deceased James L. Hamilton, who did not participate in this appeal, but whose alleged interest will be mentioned later in this opinion. The portion of this finding No. 51, which was later carried into the decretal part of the judgment and about which a part of the controversy here arises, was to the effect that Jeanie Dale Farguhar and the thirty-two associated cousins and heirs had, for a good and valuable consideration theretofore assigned, transferred, conveyed, and set over an undivided 40 per cent. interest in and to all of their right and title to the property and assets of the estate of the deceased to one G. Merlaud, of Paris, France, and that Merlaud had for a good and valuable consideration assigned and transferred an undivided three-fifths of such interests to one W. C. Cox, of Chicago, Illinois. The finding and judgment then declared that the thirty-three heirs were entitled to their respective fortieths, subject only to the assignment, with the result that finally each of them was entitled to 60 per cent. of the distributive share, but that Merlaud and Cox were entitled to the other 40 per cent. of each of such distributive shares.

The decree of heirship in the Baxter estate determined that the deceased left neither issue, husband, father, mother, brother, sister, niece, nephew, uncle, aunt, grandfather, grandmother, grandniece, grandnephew, nor any other person of nearer relationship to her than that of cousin german, and that therefore

the property of the estate not disposed of by will was owned by the forty heirs subject only to the assignments hereinbefore mentioned.

In due time, and on March 27, 1935, Davis, executor, filed his final account and petition for distribution, wherein it was recited that certain suits had been begun and proceedings instituted involving the question of distributive shares and rights. One of these suits was begun in the district court of Silver Bow county by James Bennett and E. A. Platt, involving the interest of Merlaud in the estate. Another suit was instituted in the United States court at Butte by Elizabeth Lindsay Geddes and her thirty-two associate heirs, being the thirty-three heirs otherwise designated as Jeanie Dale Farguhar et al. This suit was against the executor, Merlaud, Cox, O'Donnell and Claxton, and Platt and Bennett, plaintiffs in the other suit, and Mary Gavigan, administratrix of the estate of one of the deceased heirs. In the complaint in this action it was alleged that O'Donnell and Claxton represented the plaintiff heirs in the suit in the heirship proceeding, and that they had wrongfully permitted and allowed the court to include in finding No. 51 the provision for the diversion of the 40 per cent. share of each heir to Merlaud and Cox. The facts in relation to the matter were alleged, and fraud was charged against Merlaud and Cox and necessarily against their attorneys, Claxton and O'Donnell.

Subpoena was issued out of the United States court and served on Davis, executor, who entered his appearance in contest of the suit, which is still pending. The matters involved in the last-named suit constitute one of the issues to be decided here. Apparently the Bennett-Platt suit is either settled or does not come forward into the appeal.

The other suit involving the right of the executor to make the distribution was instituted on June 13, 1935, by one Rose Hamilton, generally known as Rose Currier. This suit was instituted in the United States District Court against all others interested, and alleged that the plaintiff, Rose Hamilton, was in fact the widow and heir of James L. Hamilton, deceased, and

that as such widow and heir she was entitled to one-half of the assets of the James L. Hamilton estate, and by virtue of such fact was entitled to one-half of the Elizabeth D. Baxter estate by reason of the fact that the property involved in the two estates is identical. This action demands that the parties holding the property, primarily the executor of the Baxter estate, shall be declared to be holding the one-half of the same as trustee for plaintiff as such widow and heir. Davis, executor, was served with process, appeared, and is contesting the suit.

In due time the petitions for distribution were heard and decree of distribution was entered. From such decree these appeals were taken, first, by the executor who desires to protect himself in the matter of distribution and who desires specific adjudication of the rights of Merlaud, Cox, O'Donnell and Claxton, on the one hand, and the alleged rights of Rose Currier Hamilton, on the other.

The thirty-three heirs, on this appeal represented by attorneys Walker and Pease, likewise appealed. Their position is that the findings as to heirship proper were correct, but that the court had no jurisdiction to consider and decide the matter of the assignments to Merlaud and Cox, with the incidental right to participation on the part of Claxton and O'Donnell.

In the appeal of the executor, the matters involved are stated under five heads in both "Questions involved," and "Specifications of error relied on." These five heads include all of the questions raised and hereinbefore enumerated.

The appeal of the thirty-three heirs goes only to the question of the assignments.

It will thus be observed that everyone interested, except Rose Currier Hamilton, relies on the decree of heirship as correct and binding in so far as it declared the identity and defined the shares of each of the respective heirs, but the appeal of the thirty-three heirs involves the other question of the assignment to Merlaud and Cox; so that it will be observed that there are really but two questions on the appeal: (1) The question of the scope and effect of the decree of heirship so far as it assumed

to declare heirship and shares; and (2) the question of the right of the probate court to consider and determine the matter of assignment of shares, in addition to the other factors.

The real questions presented actually go generally to the power and authority of the court in proceedings to determine heirship under the statute. These questions involve the jurisdiction and the power of the district court when sitting as a court of probate. We shall discuss the subject in that relation first, and later consider the matter in the more restricted aspect as presented by the assignment proposition.

The first proposition really goes back to a contention that ▇▇ long disturbed the courts of Montana and other jurisdictions similarly situated. It involves the question of the power, authority, and jurisdiction of courts in probate matters. In such jurisdictions there formerly existed separate probate courts of limited jurisdiction and restricted power. Under the present system all probate matters come within the jurisdiction of district courts. The courts of California have been confronted and embarrassed by this situation from time to time, as have also the courts of Montana. It seems to us that this court, in the case of *Thelen* v. *Vogel,* 86 Mont. 33, 281 Pac. 753, 756, really disposed of that matter, and made as plain as could be possible the exact situation with relation to it. The opinion in that case contains a very comprehensive discussion of the historical aspects and legal considerations involved in the rights and powers of district courts in probate matters in Montana. It was there explained that our Constitution only mentions the senate as a court of impeachment, the supreme court, the district court, and justice courts, and provides for such other inferior courts as the Legislative Assembly may establish in incorporated cities or towns. Attention was specifically directed to the fact that general jurisdiction is conferred on district courts by the Constitution itself, and that such jurisdiction is affirmed and restated in the statutes of Montana. (Sec. 8829, Rev. Codes 1921.) The court said: "This general jurisdiction is conferred alike and without differentiation to extend to all cases at law and in

equity and criminal cases, except as therein limited, * * *
to all matters in probate, to actions for ·divorce, and to all such
special actions and proceedings as are not otherwise provided
for in the Constitution. Therefore all matters of probate and,
necessarily, the administration of all laws relating thereto, are
now under the original jurisdiction of the district courts, as
such.'' The opinion then proceeded with a discussion of the
Code of Probate Proceedings, and the effect of the various
decisions rendered by this court with relation thereto, including
what was said in the case of *In re Davis' Estate*, 27 Mont. 490,
71 Pac. 757, *Bullerdick* v. *Hermsmeyer*, 32 Mont. 541, 81 Pac.
334, and all other cases in which the matter had been previously
discussed by this court, and wound up with the declaration
that the district court, while exercising its probate powers, is
yet the district court, a court of record exercising general juris-
diction by virtue of the Constitution, and that the limitation
on its jurisdiction merely restricts such court as to the exercise
of probate powers which it possesses, and does not in any man-
ner affect the character of such courts as superior courts of
general jurisdiction.

It seems to us, then, that the reliance placed on the old theory
that the district court, when acting in probate matters, is a
court of limited jurisdiction, is without merit. The case just
cited and from which the quotations were made emphasizes the
fact that there is no dual personality in the court. The opinion
attempts to make plain that a district judge, admittedly an offi-
cial possessed of great power, extensive jurisdiction, and large
discretion, when acting in ordinary judicial matters, is still
not subject to the ancient frailties inherent in the old probate
judge when exercising probate powers. So we say without hesi-
tation that heirship proceedings in this state are committed to
the district courts with all the power, authority, and jurisdic-
tion made inherent in such courts by the Constitution (Art.
VIII, sec. 11) and statutes.

When the identical decree of heirship here involved was be-
fore us on the previous appeal, 98 Mont. 291, 39 Pac. (2d) 186,

this whole matter was reviewed, and it was there attempted to explain the effect, not only of such decrees generally, but of this specific decree.

It will be apparent that, so far as Rose Currier Hamilton is concerned, she is confronted by two decrees of heirship, one entered in the estate of James L. Hamilton, deceased, and which was followed by decree of distribution of the property of that estate in regular order, and the other the specific decree of heirship entered in the Baxter estate, from which decree no appeal was ever taken.

In the consideration of the former appeal in the Baxter estate, the court reviewed the matter of notice, service and effect of process, and all of the things incident to and on which the decree was predicated. The specific thing under consideration, the menace to the findings in the decree brought to the attention of the court on the former appeal, had to do with one John Hamilton, a brother of both James L. Hamilton and Elizabeth D. Baxter, deceased. It was there contended that such rights as the lost brother possessed because of his relationship were not foreclosed by the proceeding. The court pointed out that the statute did not require unknown heirs to be named, and declared that the decree was binding on the lost brother, John Hamilton, and his possible issue or heirs, and that they were all foreclosed from participation in the estate. This finding was explained and predicated on the theory that the judgment of heirship under consideration was "a judgment *in rem* and that therefore the same must stand as forever binding and conclusive upon the question of the heirship of the lost brother."

We can see no different legal status existing in favor of Rose Currier, the alleged wife of James L. Hamilton, from that of the alleged lost brother referred to supra. If she was an heir at all of James L. Hamilton, it was because she was his wife. If the missing John Hamilton was an heir, it was because of the fact that he was a brother. In either instance the fact of heirship was the important thing, not the character of the relationship on which the heirship was based; and, if the pro-

ceedings in heirship foreclosed the lost brother, by the same process of reasoning they foreclosed the lost widow, the only difference being that the lost brother was never found, while in the case of the alleged widow it is alleged that she labored under the mistaken impression that her husband had long since died and that she had proceeded to remarry on that assumption, and had only recently, and too late to participate in the estate proceedings, discovered that her husband had not died as she formerly believed, but had only died as she now alleges.

The considerations do not seem to us to be sufficient to constitute a real distinction. In our opinion the matter of the heirship and succession in the estate of Elizabeth D. Baxter is *res judicata* and the world, including the lost brother and the absent wife, is bound by such decree.

For all of the conclusions heretofore reached in this matter, there is abundant authority from many jurisdictions, but we feel that there was ample said and explained on the previous appeals in this case to demonstrate the accuracy of the determination of the question.

It must be obvious that what we have said with relation to Rose Currier Hamilton and her claims and the effect of the decree of heirship and other probate proceedings upon them is likewise true of and applicable to everyone interested in the estate, whether known or unknown, including the thirty-three heirs who have taken the separate appeal, but the latter appellants stop short of the ultimate result. They rely upon the jurisdiction, power, and authority of the court to make the decree of heirship in so far as their rights of succession are concerned, but they claim that the limited jurisdiction, the restricted power of the probate court or of the district court when sitting in probate, foreclosed the court from proceeding to adjudicate the question of assignments. The appellants cite rules and authorities in an endeavor to show that, whenever in such a proceeding a question is raised as to a purported assignment, the court sitting in probate is unhorsed and divested of jurisdic-

tion and that the matter must be threshed out in some other tribunal, or, speaking figuratively, by the same judge clothed in a different garb. In other words, the effect of their contention is that the district court, when sitting strictly as such, might have jurisdiction, but that the same district court, when sitting in probate, does not possess any such jurisdiction.

What we have previously said with relation to the power and jurisdiction of district courts is likewise applicable in this respect; but, even though jurisdiction exists in the court, the major contention of the thirty-three heirs at once involves a construction of the sections of the Codes having to do with the determination of heirship. The sections are included in a separate chapter of the Revised Codes of 1921 entitled "Determination of Heirship and Interest in the Estate," and include sections 10324, 10325 and 10326. The language of these sections is almost identical with that contained in section 1664 of the Code of Civil Procedure of California. In attempting to construe these statutes, we must have in mind the fact that our legislature has laid down specific and definite rules in regard to the construction of statutes. Section 10519, Revised Codes 1921, reads as follows: "In the construction of a statute * * * the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." Thus it will be observed that effect must be given to every provision of the statutes under consideration. Section 10324, supra, defines the jurisdiction acquired by the court to ascertain facts, and there it is said: "The court or judge shall thereupon acquire jurisdiction to ascertain and determine the heirship, ownership, and interest of all parties in and to the property of said deceased, and such determination shall be final and conclusive in the administration of said estate, and of the title and ownership of said property."

Again in section 10326 the legislature employed the following equally comprehensive language: "The court or judge shall enter a default of all persons failing to appear, or plead, or prosecute, or defend their rights as aforesaid; and upon the trial of the issues arising upon the pleadings in such proceedings, the court or judge shall determine the heirship to said deceased, the ownership of his estate, and the interest of each respective claimant thereto or therein, and persons entitled to distribution thereof, and the final determination of the court or judge thereupon shall be final and conclusive in the distribution of said estate, and in regard to the title to all the property of the estate, and in regard to the title to all the property of the estate of said deceased."

It at once becomes obvious that, if it had been intended by the legislature that only the restricted matter of heirship should be determined and adjudicated, the language could have been very easily restricted to that subject alone. It would have been unnecessary to include the reference to ownership or to go further than to direct the court to determine the matter of heirship or right of succession.

This court has often, and in several late cases, laid down the rule that a statute cannot be operative if it is necessary to read something into it in order to make it understandable or workable. (*Vennekolt* v. *Lutey,* 96 Mont. 72, 28 Pac. (2d) 452; *Mills* v. *State Board of Equalization,* 97 Mont. 13, 33 Pac. (2d) 563; *State ex rel. State Board of Education* v. *Nagle,* 100 Mont. 86, 45 Pac. (2d) 1041; Lewis' Sutherland on Statutory Construction, 2d ed., sec. 85.) The converse of the last above proposition—that nothing must be read out of it—is equally true and is made equally emphatic by the statute (sec. 10519, Rev. Codes 1921), which carries the mandate that nothing shall be omitted that has been inserted, and, if possible, that such a construction must be adopted that will give effect to all provisions. (*State* v. *Redmond,* 73 Mont. 376, 237 Pac. 486; *State ex rel. Public Service Commission* v. *Brannon,* 86 Mont. 200, 283 Pac. 202, 67 A. L. R. 1020; *Maki* v. *Anaconda C. M. Co.,* 87 Mont. 314,

287 Pac. 170; *Clark* v. *Olson*, 96 Mont. 417, 31 Pac. (2d) 283; *Koppang* v. *Sevier,* ante, p. 234, 53 Pac. (2d) 455.)

The particular phase of the matter now presented has been troublesome in many jurisdictions. The matter arose in the state of California as early as 1892. (*In re Burton's Estate,* 93 Cal. 459, 29 Pac. 36, 37.) There the court said: "The superior court, while sitting in matters of probate, is the same as it is while sitting in cases in equity, in cases at law, or in special proceedings; and, when it has jurisdiction of the subject-matter of a case falling within either of these classes, it has power to hear and determine, in the mode provided by law, all questions of law and fact, the determination of which is ancillary to a proper judgment in such case." The court then emphasized the fact that in such a proceeding the superior court was required to follow substantially the mode prescribed by the statute authorizing the proceeding, and called attention to the fact that, although no claim adverse to the estate itself could be entertained, the proceeding did contemplate and include the ownership of grantees of the heirs and all those who were claimants through them, and that the proceedings authorized expressly and necessarily the consideration of the question of title to the property of the estate as between claimants, however the same might arise.

Many authorities have been called to our attention and cited with relation to this matter. At first blush it would seem that some courts have leaned to the view that the subject of assignments or transfers of interest may not be considered in such proceedings. Appellants here cite and rely upon section 1133, page 1878, 3 Bancroft's Probate Practice, which announces a rule with regard to the distribution of estates wherein no proceedings to determine heirship have occurred. We think that the rule applicable here is stated in section 1200, page 1954, of the same volume. There it is said: "The rights or interests of alleged grantees of heirs or devisees may be determined and the rights of successors to heirs who have died as well as the status of the rights of their ancestors."

518

It seems obvious to us that the legislature intended to provide ▮ for the ascertainment and determination, not only of heirs and individuals who might take by succession or will, but also of all other individuals who claim a right by virtue of assignment. To give any other interpretation to the sections would necessitate reading something out of them—would involve the disregard of what seems to us to be very plain and emphatic language. In this interpretation we feel that we are supported by the best authority available.

The thirty-three heirs claim, and it is argued in their brief, that they were defrauded into signing the contracts, assignments, and powers of attorney to Merlaud and Cox and their associates. This matter injects the question of extrinsic fraud. The thirty-three appellants very emphatically and correctly assert that fraud vitiates everything, and that wherever fraud enters into a matter it voids it. In a sense they are right. Such is the general rule. But it is not every fraud that can be reached in the manner sought to be employed here, on an appeal such as the one before us.

It is interesting to note that the heirship proceedings were begun on March 19, 1932; that a hearing thereon began on October 26, 1933, more than a year after the institution thereof; that the hearing ended on November 7, 1933; that the findings and conclusions were made and entered on March 31, 1934; and that the decree of heirship itself was not entered until July 7, 1934. In the meantime, and on November 19, 1933, the thirty-three heirs through Howard Johnson and associates attempted to obtain substitution of attorneys. They attempted to have Claxton and O'Donnell removed from the case and the other attorneys substituted. The matter of this attempted substitution came on for hearing on December 2, 1933. That was during the time the court had the principal matter under consideration. At that time Claxton and O'Donnell, acting for Merlaud, Cox and themselves, interposed a motion to require Johnson et al. to prove their authority as such attorneys. This matter apparently proceeded to a hearing, although no record of such

proceedings appears in the record here, except a copy of the order and findings of the court entered therein on September 1, 1934. That order recited that there was a hearing and found that Johnson et al. had no authority to act for the thirty-three heirs, and that such authority as they had was obtained by fraud, and denied the motion for substitution.

It will thus be observed that at the time of the hearing in ▮▮ the matter to establish heirship, etc., in the Baxter estate, no record objection had been made, or was made, to the assignments to Merlaud and Cox or to the appearance of O'Donnell and Claxton for the thirty-three heirs. At the time of the application for substitution, November 19, 1933, the court then had the matter under consideration. The hearing had been closed and everything done that could be done except the entry of judgment.

It is interesting to note also that in the course of the proceedings, in the objections filed by Johnson and his associates to the distribution of the estate, it appears that in the month of September, 1933, the objectors, the thirty-three heirs, had authorized counsel to represent them and to institute and prosecute proceedings in their behalf. Thus it will be observed that the thirty-three appellant heirs were not without knowledge in October and November, 1933, when the heirship proceedings were in progress that such proceedings were progressing, and it was not until after the hearing had closed and the trial ended that they endeavored to obtain a substitution of attorneys.

The court was bound to enter the decree of distribution in accordance with the decree of heirship and interest. The statute itself so provides: ''And the final determination of the court or judge thereupon shall be final and conclusive in the distribution of said estate,'' etc. (Sec. 10326.) There is a further provision in the statute not without significance: ''Nothing in this chapter shall be construed to exclude the right upon final distribution of any estate to contest the question of heirship, title or interest in the estate so distributed, where the same shall not have been determined under the provisions of sections

10324 to 10326 inclusive, but where the questions shall have been litigated under the provisions of these sections, the determination thereof, as therein provided, shall be conclusive in the distribution of said estate.'' (Sec. 10326.) So we must decide that the court was right in entering the decree of distribution in accordance with its previous decree in the matter of heirship and interest.

It must not be understood that we are here declaring that interested parties have no recourse on the ground of extrinsic fraud. This court has gone a considerable distance in recognizing and defining such rights. (*Bullard* v. *Zimmerman,* 82 Mont. 434, 268 Pac. 512; Id., 88 Mont. 271, 292 Pac. 730; *Kirby* v. *Hoeh,* 94 Mont. 218, 21 Pac. (2d) 732.)

No injunctions or restraining orders were issued in the suits of the alleged widow or the thirty-three heirs, appellants.

The judgment of the district court ordering distribution of the estate of Elizabeth D. Baxter, deceased, in accordance with the findings, conclusions and judgment in the matter of the heirship proceeding therein is affirmed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES MATTHEWS, ANDERSON and MORRIS concur.

Rehearing denied February 26, 1936.